**SAVIS, INC., Plaintiff,**

v.

**WARNER LAMBERT, INC., Defendant.**

**Civil No. 96–1751 (JP).**

United States District Court,
D. Puerto Rico.

June 5, 1997.

■■■■■■■■■■■■■■■■

Miguel A. Maza Peréz, Novas, Maza & Lamoso, Hato Rey, PR, for Plaintiff.

Edgardo Cartagena Santiago, Goldman, Antonetti & Córdova, San Juan, PR, for Defendant.

## ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION & BACKGROUND

The Court has before it defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (**docket No. 10**). For the reasons set forth below, the Court has not jurisdiction to adjudicate this case. The defendant's motion is hereby **GRANTED** motion this case is hereby and **DISMISSED**. The Court briefly sets forth the procedural and factual backdrop of this case.

The defendant, Warner–Lambert, Inc. ("WLI") a wholly-owned subsidiary of Warner–Lambert Company ("WLC")[1] organized under the laws of the State of Nevada, manufactures pharmaceutical, health care and confectionary products. It maintains several manufacturing plants in Puerto Rico. In August 1993, the Food and Drug Administration ("FDA") issued regulations requiring 100% electronic label verification in packaging control procedures by August 3, 1994 and which applied to three of WLI's packaging lines in Puerto Rico. *See* 21 C.F.R. parts 210–211. Spurred by these regulations, WLI entered into a series of contracts with the plaintiff, Savis, Inc., ("Savis"), a corporation existing under the laws of the Commonwealth of Puerto Rico, whereby Savis agreed to design and produce a system, incorporating comput-

er hardware and software, that would enable WLI to comply with the FDA regulations on its three lines in Puerto Rico. For various reasons, which are in dispute but with which the Court is not herein concerned, the contract was never completed. Savis brings this action for breach of contract, invoking the Court's jurisdiction based on 28 U.S.C. § 1332, alleging diversity of citizenship. In the motion now before the Court, WLI seeks dismissal of the action, alleging that the parties are both citizens of Puerto Rico and that the Court therefore lacks jurisdiction over the subject matter of the suit.

The parties have provided the Court with numerous submissions on the issue of subject matter jurisdiction. Following the defendant's initial Motion to Dismiss for Lack of Subject Matter Jurisdiction, the plaintiff filed an opposition (docket No. 14);[2] next, the defendant rejoined with an Opposition to Plaintiff's Request of Discovery and Reiterating Motion to Dismiss for Lack of Subject Matter Jurisdiction[3] (docket No. 15); then the plaintiff tendered a Motion in Reply to Defendant's Opposition to Motion to Dismiss[4] (tendered, but not filed or docketed); the plaintiff next filed a motion styled, Motion Requesting Leave of this Honorable Court to File a Reply to Defendant's Motion Titled Opposition to Plaintiff's Request for Discovery and Reiterating Motion to Dismiss for Lack of Subject Matter Jurisdiction (**docket No. 16**); and finally (we hope) the defendant filed a Motion Under Local Rule 311.7 or in the Alternative Submitting Sur–Reply (**docket No. 17**). As an initial matter, the Court **GRANTS** all motions for leave to file and accepts and will consider all submissions. The Clerk of Court **SHALL** docket the plaintiff's March 18, 1997 Motion in Reply to Defendant's Opposition to Motion to

---

1. WLI describes its parent, Warner–Lambert Company, as "a publicly held corporation with principal offices in Morris Plains, New Jersey." Def's Mot. to Dismiss for Lack of Subject Matter Jurisdiction, at 4.

2. The plaintiff included in its opposition a request for certain discovery.

3. Although styled as an Opposition to Plaintiff's Request for Discovery and Reiterating Motion to Dismiss for Lack of Subject Matter Jurisdiction, the defendant's motion is in essence a reply to

the plaintiff's opposition. Both parties have been lax about complying with Rule 311(7) of the Local Rules of the United States District Court for the District of Puerto Rico, under which leave of Court is required to file any submissions beyond a motion and opposition.

4. Although styled as a Reply to Defendant's Opposition to Motion to Dismiss, that is clearly a misnomer. The defendant has not, of course, opposed its own motion.

Dismiss. The Court will not regard any further submissions on this issue.

## II. ARGUMENTS OF THE PARTIES

The defendant argues that both it and the plaintiff are residents of Puerto Rico and that their citizenships are therefore not diverse for the purposes of 28 U.S.C. § 1332, the statute by which Congress defines diversity jurisdiction in federal district courts. Thus, according to the defendant, the Court has no jurisdiction and must dismiss the case. In particular, the defendant has alleged, through the affidavit of Mr. Robert J. Janosky, president of WLI, that Puerto Rico is WLI's principle place of business. In support of that contention, Mr. Janosky swears to the following facts (among others): (1) he, as president of WLI, "control[s] and direct[s] WLI's activities, along with WLI's management team," and that he and the management team, as well as WLI's plant managers, directors of finance, human resources, information services, and manufacturing technology and the manager of environmental affairs are all residents of Puerto Rico; (2) WLI owns and operates three manufacturing plants and a sales office in Puerto Rico, but that WLI does not own or operate facilities outside of Puerto Rico; (3) WLI's headquarters are in Vega Baja, Puerto Rico; (4) decisions on the employment and discharge of WLI employees are made by WLI's management in Puerto Rico; (5) all of WLI's gross manufacturing income is generated in Puerto Rico; (6) WLI is responsible for the preparation, filing and payment of its own taxes and Social Security contributions, records of which are kept in its offices in Vega Baja, Puerto Rico; (7) WLI has its own accounting system operated from its principal offices in Vega Baja, Puerto Rico; (8) WLI's general ledger is kept in Vega Baja, PR; (9) all of WLI's bank accounts, are maintained in banks located in Puerto Rico; (10) WLI does not have corporate offices, personnel, records, factories, warehouses, sales offices, or any corporate activity in any place outside of Puerto Rico, where the business activity and day-to-day management of WLI are performed.

The plaintiff, in its initial response, first argues that even if Mr. Janosky's assertions are credited, the defendant has not "provided [any evidence] as to defendant's relation with its parent company, Warner Lambert Corporation,[5] with whom many of the pre-contract negotiations were conducted, as well as key decisions and instruction at all stages of the execution of the contract object of this case." Moreover, the plaintiff asserts that "[t]he parent company's involvement in the contract object of this case as well as in defendant's business operation, are primary issues in the determination by this Court as to defendant's principal place of business for diversity jurisdiction purposes." The plaintiff, citing *Media Duplication Services v. HDG Software*, 928 F.2d 1228, 1235–1237 (1991), in which the United States Court of Appeals for the First Circuit discussed the "nerve center" test for the determination of a corporation's principle place of business, contends that the defendant's principle place of business is outside of Puerto Rico. In support of its contention, the plaintiff has appended to its opposition various correspondence between the defendant, the defendant's parent corporation, and the plaintiff, as "evidence that the parent company, which by defendant's own admission is a publicly held corporation with principal offices in New Jersey, is the 'nerve center' of WLI and intervenes [sic] a substantial part of its operations was outside Puerto Rico."[6]

**5.** The parent is Warner–Lambert Company, not Warner Lambert Corporation.

**6.** The plaintiff's opposition further asked that, "in the event the Court finds the documentation provided in exhibit 1 is still insufficient to establish defendant's citizenship as being outside this forum, and in light of the fact that defendant in the present case has failed to provide any evidence as to its relation to and interactions with the parent company, Warner Lambert Corporation, both plaintiff and this Court lack the additional information and evidence necessary to establish defendant's principal place of business ... the only way in which plaintiff can obtain additional information and documentary evidence to prove the other elements set forth in the applicable case law is to carry out a limited discovery, including the sending of an interrogatory and a request for production of documents, to both defendant and the parent office, and any other entity affiliated with them."

The defendant's reply argues that the plaintiff has failed to provide competent evidence to establish jurisdiction. In particular, the defendant finds fault with the plaintiff's failure to provide an affidavit (from someone other than the plaintiff's lawyer) attesting to the factual allegations made in its opposition. The defendant's reply also argues that, even if authenticated or supported by affidavit, the plaintiff's theory would not suffice to establish diversity jurisdiction, because the theory does not impugn the defendant's allegations that WLI's principal place of business is Puerto Rico. The defendant, although disputing the applicability of the "nerve center" test, goes on to assert that Puerto Rico is the principal place of business even under that test.

The plaintiff's surreply first argues that the lack of affidavit evidence is not fatal. Next, the surreply reiterates the plaintiff's need for more discovery in order to prove that WLI's "nerve center" is in New Jersey. Finally, just to be on the safe side, the plaintiff supplies an affidavit from its president, Mr. Ron Hartmann, attesting to the facts alleged in Savis' initial opposition.

Finally, the defendant's sur-surreply asks the Court to disregard the plaintiff's surreply and amended affidavit as violative of Local Rule 311(7) and then asserts that even in light of Mr. Hartmann's affidavit, the plaintiff has failed to establish diversity.

The Court can summarize the parties' contentions as follows. The defendant alleges that its principal place of business is Puerto Rico and it is therefore a citizen of Puerto Rico for the purposes of diversity jurisdiction, as is the plaintiff, so that the parties are not diverse and the Court is without jurisdiction over this state-law contract dispute. The plaintiff responds that WLI's "nerve center," and therefore its principal place of business, is really in New Jersey, so that the parties are diverse and this Court has jurisdiction. In the alternative, the plaintiff seeks limited discovery in order to determine facts that would show that the defendant has its

principal place of business outside of Puerto Rico.

## III. ANALYSIS

### A. Subject Matter Jurisdiction

█ Federal courts are courts of limited jurisdiction. U.S. Const. art. III cl. 2. Congress has provided federal district courts with original jurisdiction over "all civil actions where the matter in controversy exceeds the sum of $50,000,[7] exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332 (amended by Pub.L. 104–317, Title II, § 205(a), 110 Stat. 3850 (October 19, 1996)). The issue of subject matter jurisdiction may be raised at any time during a proceeding, either by the parties or by the Court, *sua sponte*, and at any point it becomes clear that the court lacks subject matter jurisdiction, the court must dismiss the action. *See McNutt v. General Motors Accept. Corp.*, 298 U.S. 178, 184, 56 S.Ct. 780, 782–83, 80 L.Ed. 1135 (1936); *Capron v. Van Noorden*, 2 Cranch (6 U.S.) 126, 127, 2 L.Ed. 229 (1804); *Chaparro–Febus v. Local 1575*, 983 F.2d 325, 329 n. 4 (1992). In considering whether the Court has jurisdiction over the subject matter of an action, the Court may consider extra-pleading material, such as affidavits and testimony. *Land v. Dollar*, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *see, e.g., Media Duplication Services, Ltd. v. HDG Software, Inc.*, 928 F.2d 1228, 1236 (1st Cir.1991); *Rodriguez v. S K & F Co.*, 833 F.2d 8, 9 (1st Cir.1987).

█ In the case at bar, the plaintiff alleges diversity of citizenship to invoke this Court's jurisdiction. The case involves a single corporate plaintiff and a single corporate defendant. For the purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A corporation can have but a single principal place of business for the purposes of diversity jurisdiction. *Id.* (a corporation is a citizen of "*the* State where it

7. After the plaintiff filed this case, Congress amended the amount in controversy requirement for diversity jurisdiction. As of the 90th day after October 19, 1996, for diversity jurisdiction to adhere to a controversy, over $75,000 must be at stake. 28 U.S.C. § 1332.

has its principal place of business"); *Gafford v. General Elec. Co.*, 997 F.2d 150, 151 (6th Cir.1993); *Gulf Chemical Corp. v. Raytheon–Catalytic, Inc.*, 931 F.Supp. 955, 957 (D.Puerto Rico 1996). The party invoking federal jurisdiction bears the burden of proving that jurisdiction exists. *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d at 57, 60 (1st Cir.1993). Of course, where that jurisdiction rests on the diversity of the parties' citizenship, the party invoking jurisdiction will be put to the task of proving that the parties' citizenships are diverse. *Media Duplication Services*, 928 F.2d at 1236; *de Walker v. Pueblo Int'l. Inc.*, 569 F.2d at 1169, 1173 (1st Cir.1978); 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3625, at 640 (1984). Where the party fails to adduce sufficient evidence to establish the location of the corporation's principal place of business, diversity jurisdiction cannot be invoked. *Media Duplication Services*, 928 F.2d at 1236.

It is uncontested that the plaintiff is incorporated in Puerto Rico; that the plaintiff's principle place of business is also in Puerto Rico; that the defendant is incorporated in Nevada; and that the amount in controversy exceeds fifty-thousand dollars ($50,000). The only additional requirement for establishing the Court's jurisdiction over this suit is that WLI's principal place of business must be outside Puerto Rico. If it is, the parties' citizenships are diverse, and the Court has jurisdiction over this case; otherwise, the case must be dismissed.

The First Circuit has adopted three tests for determining the principal place in which a corporation does business for the purpose of diversity jurisdiction—"(1) the 'nerve center' test, which searches for the location from which the corporation's activities are controlled and directed; (2) the 'center of corpo-

rate activity' test, which searches for the location of the corporation's day-to-day management; and (3) the 'locus of the operations' test, which searches for the location of the corporation's actual physical operations." *Taber Partners*, 987 F.2d at 61; *de Walker*, 569 F.2d at 1170–73.

Despite having endorsed three distinct tests, the First Circuit has described the application of these tests as "not necessarily inconsistent." *Topp v. CompAir, Inc.*, 814 F.2d 830, 834 (1st Cir.1987). The application of the tests must be consistent because each corporation can have only one principal place of business. In order to obtain consistent results, a court should only apply one of the tests to any given corporation, because the foci of the various tests differ and could lead to disparate results. Despite setting up a variety of distinct tests, however, the jurisprudence from this circuit provides little guidance as to when each test should apply, leading many courts facing the issue to apply each and every available test in order to avoid having to choose which test to apply. *See, e.g., Taber Partners*, 987 F.2d at 63 (applying all three tests); *de Walker*, 569 F.2d at 1172 (same); *Rivera v. Pepsico Puerto Rico, Inc.*, 936 F.Supp. 45, 47–48 (D.Puerto Rico 1996) (same); *but see Gulf Chemical Corp. v. Raytheon–Catalytic, Inc.*, 931 F.Supp. 955, 957 (D.Puerto Rico).[8] That is particularly true with respect to the "locus of operations" and the "center of corporate activities" tests. We have found no precedent to explain when one of these and not the other should be applied. Indeed, the First Circuit appears to be the only circuit to apply distinct "center of corporate activities" and "locus of operations" tests. *See* Wright, *supra*, § 3625 (1997 Supp.). Therefore, the Court will simply determine whether application of the "nerve center" test is appropriate,

---

**8.** This situation has lead several courts to adopt a unitary "total activities" test. *See Amoco Rocmount Co. v. Anschutz Corp.*, 7 F.3d 909, 915 (10th Cir.1993) (recognizing that the "nerve center" and "corporate activity" tests are but two sides of the same coin and therefore adopting a "total activities" test incorporating elements of both); *Harris v. Black Clawson Co.*, 961 F.2d 547, 549–550 (5th Cir.1992); *Vareka Investments, N.V. v. Am. Inv. Prop. Inc.*, 724 F.2d 907, 910 (11th Cir.1984). The "total activities" test "incorporates both the place of activities test and the nerve center test," *Vareka*, 724 F.2d at 910, and, instead of focusing on *either* management or operations, determines the principal place of business of every corporation based on a single test considering "all the circumstances surrounding a corporation's business." *White v. Halstead Indus., Inc.*, 750 F.Supp. 395, 397 (E.D.Ark. 1990).

and if not, the Court will apply the other two tests in tandem.

The general rule is that, "where a corporation is engaged in only one business activity, substantially all of whose operations occur in one state, even though policy and administrative decisions are made elsewhere, the state of operations is the corporation's principal place of business." *Santana Salgado v. DuPont Pharmaceutical, Inc.,* 664 F.Supp. 644, 645 (D.Puerto Rico 1987); *Bender v. Hilton Riviera Corp.,* 367 F.Supp. 380, 383–384 (D.Puerto Rico 1973). In other words, "the bulk of corporate activity, as evidenced by the location of daily operating and management activities, governs the choice of a principal place of business." 13B Wright, *supra* § 3625, at 625. "Consequently, when a corporation is engaged in a single line of business with its operating functions located in one state and executive and administrative offices in another state, its principal place of business for diversity purposes is the former state." *Id.; accord Hilton Riviera Corp.,* 367 F.Supp. at 383. As the corporation's operations become more "far flung" and operations are carried out in multiple jurisdictions, however, the locus of operations becomes more difficult to determine and consideration of the corporation's locus of control, or "nerve center", becomes more important. *Topp,* 814 F.2d at 834, 13B Wright, *supra,* § 3625 at 630–632. This leads to the conclusion "that the nerve center test should be restricted to instances in which the place of operations logically cannot be used to determine a corporation's principal place of business." Wright, *supra* § 3625 at 635; *accord Topp,* 814 F.2d at 834 (application of "nerve center" test limited to "corporations with complex and far flung activities where only the nerve center can truly be termed the principal place of business").

Looking at the evidence adduced by the parties, the Court holds that the "nerve center" test is inappropriate for determining WLI's principal place of business, and either the "locus of operations" or "center of corporate activities" test applies. That is so because WLI's operations are confined to Puerto Rico. According to the uncontested affidavit of WLI president Robert Janosky,

WLI is engaged only in the manufacture and sale of pharmaceutical, health care, and confectionary products. All of WLI's manufacturing operations are performed in three plants, all located Puerto Rico; WLI's sales activities are likewise conducted from an office in Puerto Rico. WLI neither owns nor operates any facilities outside of Puerto Rico. All of WLI's employees work in Puerto Rico, and 100% of WLI's gross income from manufacturing is generated in Puerto Rico. The evidence clearly demonstrates that WLI's operations are not so complex or far flung as to permit the application of the "nerve center" test.

First we apply the "locus of operations" test. Under that test, because WLI is engaged in only two real business activities (i.e., the production and sale of various products), and because substantially all of those activities occur in Puerto Rico, regardless of where policy and administrative decisions are made, Puerto Rico is WLI's principal place of business. *Santana Salgado,* 664 F.Supp. at 645.

We reach the same conclusion applying the "center of corporate activities" test. The First Circuit has described the "center of corporate activity" test as shifting the focus to the place "where the day-to-day management [of the corporation] takes place." *Topp,* 814 F.2d at 834. In his uncontroverted affidavit, Mr. Janosky explains that WLI's headquarters are in Vega Baja, Puerto Rico; that each of WLI's three plants is run by its own operating and management staff located in Puerto Rico; that employment decisions regarding WLI employees are made by WLI's management in Puerto Rico; that WLI prepares, files, and pays its own taxes, records of which are kept in its offices in Vega Baja; that WLI has its own accounting system which is operated out of Vega Baja; that WLI has its own general ledger which is kept in its principal offices in Vega Baja; that all of WLI's bank accounts are located in Puerto Rico; that WLI does not have corporate offices, personnel, records, factories, warehouses, sales offices, or any corporate activity in any place outside of Puerto Rico. The uncontroverted evidence unambiguously points to Puerto Rico as WLI's principal

place of business under the "center of corporate activities" test.

 The plaintiff has not disputed any of the facts we have cited. Instead, the plaintiff asks the Court to apply the "nerve center" test and, based on the involvement of WLI's parent corporation in the negotiations leading to the contract at issue in this suit, to hold that WLI's "nerve center" is in New Jersey. The plaintiff's argument misunderstands a fundamental premise of corporate law—a corporation has its own identity, and, absent very rare circumstances, the identity of a corporation's owner will not be imputed to the corporation. 1 Moore's Federal Practice ¶ 0.77[1.–2], at 717.10. In discussing the application of any of the three citizenship-determining tests it has endorsed, the First Circuit has been extremely insistent "that in determining a corporation's principal place of business, a district court's inquiry must focus solely on the business activities of the corporation whose principal place of business is at issue."[9] *Taber Partners*, 987 F.2d at 62–63. In other words, "except in rare instances, even when a court applies the nerve center test, the inquiry must be limited to an examination of the subsidiary's own activities, officers, and facilities." *Topp*, 814 F.2d at 835. That is so even "if the parent corporation exerts a high degree of control through ownership or otherwise, and even if the separateness is perhaps only formal, as long as the corporate separateness is real and carefully maintained." *U.S.I. Properties v. M.D. Constr. Co., Inc.* 860 F.2d 1, 7 (1st Cir.1988).

The basis for the plaintiff's argument that WLC's principal place of business should be imputed to WLI is WLC's involvement in the contract negotiations between WLI and Savis. In support of its assertion that New Jersey is WLI's principal place of business,

Savis has given the Court the affidavit of Ron Hartmann, Savis' president. Mr. Hartmann swears to having been involved in the contract negotiations with WLI, and attests that many of the pre-contract negotiations took place at the offices of WLC in New Jersey, at which officers of WLC were always present but from which WLI officers were sometimes absent. He further warrants that WLC made many, if not all, of the decisions at every level related to the contract negotiations,[10] that the contract was accepted at WLC's offices in New Jersey, and that extensive correspondence was carried on between Savis and WLC as part of the contract negotiations. Finally, Mr. Hartmann attests to certain of his perceptions regarding the corporate separateness of WLI and WLC during the contract negotiations. However, his perceptions, standing alone, are of no consequence to our determination of WLI's principal place of business.

Taking all of Mr. Hartmann's assertions as true, we still hold that WLI's principal place of business must be determined by the "locus of operations" or "center of corporate activities" test. Savis has adduced no evidence that WLI conducts any of its operations outside of Puerto Rico, and where a corporation's activities are confined, the "nerve center" test should not be used. *Topp*, 814 F.2d at 834.

Our decision is supported by the First Circuit's opinion in *Topp*. The plaintiff in *Topp*, a resident of New Hampshire who had served as both the president of CompAir Inc. and a director of CompAir Ltd. (formerly CompAir Inc.'s parent) sued CompAir Inc., CompAir Ltd., Siebe, plc. (CompAir Inc.'s new parent), and Barrie Stephens (Siebe's CEO) for wrongful discharge. CompAir Inc., a Delaware corporation, provided administrative and financial services in at least

---

**9.** The *Taber* court also noted that the First Circuit has been insistent on the proposition that "an exception to this general rule applies where there is evidence that the separate corporate identities of a parent have been ignored." However, Savis has not presented, nor even attempted to present, any evidence that would support of an argument that WLI's corporate veil should be pierced. We see no reason to even address the issue.

**10.** He states that this fact was "evident to [him] from our conversations and correspondence." He does not state with whom he had those conversations or correspondence or their substance. This particular allegation, as to WLC's decisions making authority, is of dubious value, for we are not convinced that Mr. Hartmann could in any way know who made the decisions for WLI during the contract negotiations. But even if WLC in fact had decision making power during the negotiations, our analysis would not be affected.

five states. It maintained an office and conducted some of its business activities in New Hampshire. CompAir Inc.'s parent corporation, Siebe, was a United Kingdom corporation. Barrie Stephens, Siebe's CEO, called the plaintiff and informed him that he was being discharged. Topp sued, and the defendants moved for dismissal for lack of diversity, arguing that CompAir Inc. had its principal place of business in New Hampshire, where the plaintiff was a citizen. The district court applied the "nerve center" test and held that CompAir Inc.'s principal place of business was England, where "the shots were called" (i.e. where the major business decisions, including hiring and firing of employees, were made). The First Circuit overturned the district court's decision as a misapplication of the "nerve center" test. Specifically, the First Circuit found that the district court erred in ignoring the corporate separation between CompAir Inc., and its parent, and by imputing the activities of its parent's executives to CompAir Inc.:

> The fact that a parent corporation ... is located in England does not demonstrate that the nerve center of the particular corporation at issue is also located there. So long as that corporation is entitled to be viewed as a separate corporate entity, the nerve center test does not search for the locus of its parent corporation, nor of those having the ultimate controlling interests. The test, in other words, does not search out the home of the economic tsar who ultimately dominates, through other corporations or otherwise, the entity in question. Rather, so long as the entity's corporate form is entitled to credibility, the nerve center test looks for the localized nerve center from which the corporation in issue is directly run. If this were not so, every independently incorporated, wholly owned subsidiary which is part of a large conglomerate would be treated (for diversity jurisdiction purposes) as a mere division of a large company rather than as a separate corporation ...

> [Topp] relies upon his assertions that CompAir Inc. had no independence in its financial decisions and that Stephens was ignoring the corporate entities when he fired Topp. To a degree this is doubtless

so. But the main thrust of this evidence is simply that the parent corporation was exerting the control it had over its subsidiary. And ... the fact that a parent corporation exercises the control which is necessarily incident to the full ownership of its subsidiary is insufficient, without more, to justify ignoring the separate entities ...

> The gist of all plaintiff's arguments is that the federal court should be delving into how many important decisions and functions of a subsidiary are controlled by that subsidiary, and how many were controlled by the parent corporation. Again, keeping in mind that the issue here is CompAir Inc.'s principal place of business, and recognizing that CompAir Inc. has always held itself out as having accomplished its principal business activity ... through its own officers, employees and facilities, we can discern no value in having the federal district courts get mired down in the hopeless and unnecessary task of deciphering the internal power struggles going on between a parent corporation and its subsidiaries.

*Topp,* 814 F.2d at 835–837.

The situation in the case at bar mirrors that addressed by the First Circuit in *Topp.* Here, Savis is relying on the fact that officers of WLC, the defendant's parent, were very involved in the negotiations leading up to the contract between Savis and WLI. Under *Topp,* we are not permitted to consider that fact. WLI is primarily engaged in the manufacture and sale of certain products. With respect to its primary business operations, we have no evidence-that WLI does not "call its own shots." Under *Topp,* the fact that WLC, WLI's owner, is deeply involved in a particular matter of serious financial concern is irrelevant to the determination of WLI's "nerve center". WLC is merely "exercising the control which is necessarily incident to the full ownership of its subsidiary," and "without more, [that is insufficient] to justify ignoring the separate corporate entities." Therefore, irrespective of WLC's involvement in the contract negotiations, we must conclude that all of WLI's activities are confined to Puerto Rico, and. the "nerve center"

test is unsuitable.[11] Savis has failed to carry its burden of establishing jurisdiction.

## B. Further Discovery

Savis also seeks additional discovery in order to develop facts that would allow it to successfully invoke diversity jurisdiction. In order to bring suit in federal court under the court's diversity jurisdiction, a plaintiff must be able to prove the court's ability, if that ability is challenged, to exercise dominion over the controversy underlying the suit. *Thomson v. Gaskill,* 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *Topp,* 814 F.2d at 839. The Court's power to order discovery is circumscribed by its jurisdiction; where it has no jurisdiction, it has no power, and cannot order discovery. *Stoll v. Gottlieb,* 305 U.S. 165, 171–172, 59 S.Ct. 134, 137–138, 83 L.Ed. 104 (1938); *Thompson v. Whitman,* 85 U.S.(18 Wall.) 457, 467, 21 L.Ed. 897 (1873). As a practical matter, federal courts generally assume jurisdiction over the subject matter of a case either until it becomes apparent that no jurisdiction exists or until a party to the matter over which a court has assumed jurisdiction challenges that jurisdiction. *See Stoll,* 305 U.S. at 171, 59 S.Ct. at 137. Where the exercise of jurisdiction is challenged however, the party invoking the court's power bears the burden of adducing sufficient evidence to establish jurisdiction. In order to meet that burden, the party cannot simply expect to utilize that power which it attempts to invoke to obtain a discovery expedition for a factual justification for invoking that jurisdiction. It is true that federal courts have been willing to order discovery when the parties have disputed jurisdictional issues. But this is done in the courts' discretion, and generally only where the challenge has been directed at personal jurisdiction, *see, e.g., Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *Com. of Puerto Rico v. SS Zoe Colocotroni,* 61 F.R.D. 653 (D.Puerto Rico 1974), or where the challenge to the courts' subject matter jurisdiction is based on

the application of a federal statute. *See, e.g., Blackburn v. United States,* 100 F.3d 1426, 1436 (9th Cir.1996) (district court had discretion to provide limited discovery regarding issue of subject matter jurisdiction under the Federal Tort Claims Act); *McAllister v. F.D.I.C.,* 87 F.3d 762, 766 (5th Cir.1996) (district court abused its discretion in not permitting discovery into issue determinative of subject matter jurisdiction under Financial Institutions Reform, Recovery, and Enforcement Act of 1989). We distinguish the propriety of ordering discovery on the issue of jurisdiction where the dispute is over personal jurisdiction or subject matter jurisdiction hinging on the interpretation of a federal statute. The notion of personal jurisdiction is quite distinct from that of subject matter jurisdiction and the ramifications of a lack of personal jurisdiction likewise wholly unlike the consequences of a lack of subject matter jurisdiction. *See Insurance Corp. of Ireland,* 456 U.S. at 701–702, 102 S.Ct. at 2103–2104. Similarly, the rationale for ordering discovery on the issue of subject matter jurisdiction when jurisdiction depends on the genuinely disputed application of a substantive federal statute does not apply when subject matter jurisdiction depends on diversity. While we will not here fully expound on the distinction, suffice it to say that when a party invokes subject matter jurisdiction based on diversity of citizenship, that party must have a solid factual basis supported by evidence in order to assert that the parties are indeed diverse. This Court will not, in its discretion, *see Rivera–Flores v. Bristol–Myers Squibb Caribbean,* 112 F.3d 9 (1st Cir. 1997); *Fennell v. First Step Designs, Ltd.,* 83 F.3d 526, 534 (1st Cir.1996) (district court has broad discretion in ruling on discovery requests), allow the invoking party to utilize the Court's power to order discovery as a tool to fish for that solid factual basis. In other words, the Court will not order discovery on the issue of diversity jurisdiction unless the plaintiffs have already provided sufficient evidence of the parties' citizenship to instill in the Court a belief that further discovery would proba-

11. This analysis points to the fundamental misconception or illusion of maintaining multiple distinct tests for determining a corporation's principal place of business: the district court is forced to apply the test to determine its applicability. A unitary test considers the various tests for what they really are, which is "two sides of the same coin." *Amoco Rocmount,* 7 F.3d 909.

bly lead to proof of diversity and enable the plaintiff to establish subject matter jurisdiction. As the facts in this case are not nearly sufficient enough to support an assertion of diversity, the Court will not indulge plaintiff's request for additional discovery.

IT IS SO ORDERED.