Maria **DEL ROSARIO–ORTEGA,**
et al., Plaintiffs,

v.

**STAR–KIST CARIBE, INC.,**
et al., Defendants.

No. Civ. 00–1475(SEC).

United States District Court,
D. Puerto Rico.

Jan. 31, 2001.

Freddie Pérez–González, San Juan, PR, for plaintiff.

Alexander Henderson Bopp, David C. Indiano Vicic, Indiano & Williams, PSC, San Juan, PR, for defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is Defendants' motion to dismiss for lack of subject matter jurisdiction. **(Docket # 2).**[1] For the reasons stated below, Star–Kist's motion to dismiss is **GRANTED IN PART AND DENIED IN PART.** Judgment shall be entered accordingly.

### I. Background

Plaintiffs' complaint, filed on April 7, 2000, pleads a cause of action in tort against Star–Kist Caribe, Inc. ("Star–Kist Caribe") and Star–Kist Foods, Inc. ("Star–Kist Foods"), for an injury suffered by minor-plaintiff Beatriz Blanco–Ortega, ten years old, who slit her right hand little finger while opening a can of tuna contained in a lunch kit manufactured and distributed by the Defendants. The Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1332(a) alleging diversity of citizenship between the Defendants and the Plaintiffs. (Docket # 1 ¶¶ 1–8). Plaintiffs allege that while they are citizens of Puerto Rico, the defendant corporations are "organized under the laws of a state other than Puerto Rico, with principal offices in Newport, Kentucky." (Id. at ¶ 9).

---

1. Also considered in this opinion are Plaintiff's "Partial Opposition" to Star–Kist's motion. (Docket # 17) and Defendants' reply to Plaintiff's Opposition. (Docket # 24).

However, on July 10, 2000 the Defendants filed a motion to dismiss alleging that Star–Kist Caribe is a wholly-owned subsidiary of Star–Kist, and that it is a *bona-fide,* separate and distinct corporate entity engaged in the packing and distribution of tuna products in Puerto Rico. In addition, the defendants assert that Star–Kist Caribe is fully capitalized and that it maintains corporate formalities, including board meetings and corporate books. Also, Star–Kist Caribe's board of directors has different members from Star–Kist's. Therefore, they allege that for diversity purposes, Star–Kist Caribe's citizenship must be considered separately and distinctly from Star–Kist's. (Docket # 2 at 4).

On that issue, Star–Kist Caribe produced an unsworn statement under penalty of perjury signed by Janet Rich, Star–Kist's Corporate Secretary, who attests that Star–Kist Caribe is incorporated in the State of Delaware with an alleged principal place of business in Puerto Rico. (Docket # 2, Attach. 1 ¶ 3). She also attests to the fact that Star–Kist Caribe is fully capitalized and holds board meetings and maintains corporate books. (*Id.* ¶¶ 4–5). In addition, she stated that "some of the members of the board of Star–Kist Caribe, Inc. are different than [sic] the members of the board of Star–Kist Foods, Inc." (*Id.* at ¶ 6). Also, that "the managerial offices of Star–Kist Caribe, Inc. are located in Puerto Rico." (*Id.* at ¶ 7). The office of the General Manager of Star–Kist Caribe is also located in Puerto Rico. (*Id.* at ¶ 8). Star–Kist Caribe owns and operates a tuna canning/packaging center only in Puerto Rico. (*Id.* at ¶ 9). That tuna canning/packaging plant is managed by personnel in Puerto Rico. (*Id.* at ¶ 10). Finally, Star–Kist Caribe does not own or operate facilities outside of Puerto Rico. (*Id.* at ¶ 11).

Defendants' second exhibit is an unsworn declaration under penalty of perjury by Alfredo Archilla, Star–Kist Caribe's Vice–President and General Manager, who attests to the same facts asserted by Ms. Janet Rich. (Docket # 2, Attach. 2). Based on these unsworn declarations, the Defendants argue that this case must be dismissed because of lack of complete diversity.

On August 21, 2000, Plaintiffs requested an extension of time to conduct limited discovery on the issue of Defendants' citizenship. (Docket # 6). Said motion was granted by the Court on August 28, 2000. (Docket # 8). On December 6, 2000— after several extensions of time related to discovery—the Plaintiffs filed a "Partial Opposition." (Docket # 17). Plaintiffs' opposition first alleges that Star–Kist Caribe's principal place of business, using the "control nerve center" test, is either Pittsburgh, Pennsylvania, or Newport, Kentucky. For that purpose, Plaintiffs produced evidence that establishes the following on their behalf: (1) that Star–Kist Caribe is incorporated in Delaware, (2) that its principal office is located at 900 Market Street in Wilmington, DE, although it is authorized to do business anywhere in the world; (3) that Star–Kist Caribe does not keep its business records in Puerto Rico. Its corporate books, accounting records, and other business records are kept under the custody of Mrs. Kimberly Kirkpatrick, Star–Kist Caribe's Secretary, whose offices are in Pittsburgh, PA. (Docket # 17, App. G—Annex 3C); (4) Star–Kist Caribe's internal accountant and comptroller is Mr. Steve Rayburn, whose office is located in Pittsburgh, PA. (Docket# 17, App. G—Answer 1, and App. I, Resp. 3g); (5) the latest annual reports for Star–Kist Caribe could not be obtained neither from the Commonwealth Department of State, nor from the Defendants themselves through discovery, (Docket # 17, App. J); (6) that out of nine (9) officers and directors for whom Star–Kist Caribe produced addresses, only one (1) has an office in Puerto Rico (Mr. Alfredo Archilla, formerly Director, Vice–President, and since the year 2000, President of Star–Kist Caribe). All the other

officers or directors have offices in Pennsylvania, Kentucky or California (Docket # 27, App. G); (6) no address was provided where the board of directors meetings take place; (7) there is some evidence adduced by the Plaintiffs which supports the inference that the H.J. Heinz Company ("Heinz"), Star–Kist and Star–Kist Caribe have common officers and directors and that they conduct their business outside of Puerto Rico. For example, Plaintiff presented evidence that Star–Kist Caribe's board members tender their resignation to the H.J. Heinz Company and that Star–Kist directors are the ones who approve and ratify the Star–Kist Caribe's appointees for directorships. (Docket # 27, App. G).

In the alternative, Plaintiffs' counsel argues that even if the Court finds that Star–Kist Caribe's principal place of business is Puerto Rico, the complaint should be maintained against Star–Kist. For that purpose, Plaintiffs argue that Star–Kist Caribe is not an indispensable party. (*Id.* at 2).

The Defendants replied that Star–Kist Caribe is an indispensable party because it has a substantial interest in the outcome of this litigation. For example, "more than likely, Star–Kist Caribe packed the can of tuna which is at the heart of this dispute." (Docket # 24 at 12). Moreover, the Defendants cite caselaw indicating that "where the subsidiary is the primary participant in a dispute involving both the parent and the subsidiary, the subsidiary is an indispensable party." (*Id.*) (quoting *E & E Investment, Inc. v. Simmons, Co.,* 169 F.R.D. 467, 470 (D.P.R.1996)).

## II. Analysis of Applicable Law

### A. Jurisdiction

This court has original jurisdiction over civil actions between citizens of different states in which the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). For that purpose, "[d]iversity must be complete: the citizenship of each plaintiff must be shown to be diverse from that of each defendant." *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373–74, 98 S.Ct. 2396, 2402–03, 57 L.Ed.2d 274 (1978). Where corporations are concerned, they are considered citizens of both the State of incorporation and the State where they maintain their principal place of business. 28 U.S.C. § 1332(c)(1); *Toste Farm Corp. v. Hadbury, Inc.,* 70 F.3d 640, 642 (1st Cir.1995).

In this particular case, it is undisputed that co-defendant Star–Kist Caribe is incorporated in the State of Delaware. At issue is whether its principal place of business is Puerto Rico. That determination shall be made considering the facts as they existed at the commencement of the case. *Toste Farm Corp.,* 70 F.3d at 642. On that issue, plaintiff bears the burden of proof. *Alicea–Rivera v. Sindicato De Aseguradores,* 12 F.Supp.2d 243, 245 (D.P.R.1998), citing *Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942) and *Hawes v. Club Ecuestre El Comandante,* 598 F.2d 698, 702 (1st Cir.1979) ("Since statutes conferring diversity jurisdiction must be strictly construed, where a plaintiff's claim of diversity is challenged, the plaintiff has the burden of proof."). Moreover, plaintiff cannot rely on unsubstantiated allegations to satisfy this burden. *Media Duplication Serv., Ltd. v. HDG Software, Inc.,* 928 F.2d 1228, 1235 (1st Cir.1991) ("Once jurisdictional allegations are challenged, the party asserting diversity has the burden of establishing those allegations with competent proof. No presumption of truthfulness attaches to the allegations.").

When the principal place of business of a corporation is involved, the First Circuit has established that any of three tests may be used to determine its location. *See Walker v. Pueblo Int'l, Inc.,* 569 F.2d 1169, 1171 (1st Cir.1978). These three tests are "distinct, but not necessarily inconsistent." *Id.* The first, the "nerve center test" establishes that a corporation's principal place of business is "the

center from which a multifaceted corporation's officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective." *Id.* at 1172 (internal quotations and parenthesis omitted). The second, "the center of corporate activity test" looks to the place where the corporation's day-to-day management is carried out. *Id.* A third test focuses on "the locus of the operations of the corporation," *Id.*, that is, "where the bulk of the corporation's actual physical operations are located." *Topp v. CompAir Inc.*, 814 F.2d 830, 834 (1st Cir. 1987) (citing *Inland Rubber Corp. v. Triple A Tire Service, Inc.*, 220 F.Supp. 490 (S.D.N.Y.1963)).

█ Applying these tests, the First Circuit has held that a corporation has its principal place of business in that State where it operates independently from its parent company, where it keeps all of its corporate records, ledgers and accounts, and where it is "directed and controlled by [its] officers." *Rodriguez v. SK & F Co.*, 833 F.2d 8, 9 (1st Cir.1987). Moreover, in the parent-subsidiary context, the First Circuit has stated that there are "two unremarkable propositions: (1) that in determining a corporation's principal place of business, a district court's inquiry must focus solely on the business activities of the corporation whose principal place of business is at issue; and (2) that an exception to this general rule applies where there is evidence that the separate corporate identities of a parent and subsidiary have been ignored." *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 62-3 (1st Cir.1993). If the corporate veil between parent and subsidiary is observed,[2] the fact that the parent corporation "[i]s ultimately the sole beneficiary and director of the subsidiary's corporate activities" is of no consequence for diversity purposes.

*Id.* at 62. (quoting *Walker v. Pueblo Int'l,* 569 F.2d at 1171).

In *Taber,* the First Circuit concluded that a partnership whose "sole corporate 'activities' consist of holding or administering their assets in [the subject corporation], and that all such administering occurs exclusively in New York," was domiciled in New York under either of the three tests. 987 F.2d at 63. In any case, it is clear that "what is sought, except in rare circumstances where the corporate veil is properly disregarded, is the operational center of the corporation in question, giving proper regard to the corporate identity—not necessarily the ultimate 'nerve center,' in the sense of the place where the real power resides." *Topp v. CompAir Inc.*, 814 F.2d at 835 n. 4.

█ In this particular case, the Plaintiffs do not argue that the corporate veil between Star–Kist and Star–Kist Caribe has been disregarded by the companies. Accordingly, the Court disregards Star–Kist's parent status from the determination of Star–Kist Caribe's principal place of business. For that purpose, the Court shall only consider the evidence in the record as provided by the parties: (1) the unsworn statements under penalty of perjury signed by Janet Rich, Star–Kist's Corporate Secretary and Alfredo Archilla, Star–Kist Caribe's Vice–President and General Manager; (2) Star–Kist Caribe's Certificate of Incorporation; (3) Defendants' answers to the interrogatories submitted by the Plaintiffs; (4) Star–Kist's reports filed at the Commonwealth State Department; (5) Plaintiffs' exhibits regarding the meetings of the board of directors, (Docket # 17, Ex. G); (6) letters of resignation by Mr. Charles K. Johnson and Ms. Diane B. Owen, (*Id.*); and (7)

---

**2.** The court's exact words where if "there is nothing in the record to undermine the parent's claim that the two corporations were separately incorporated, had separate boards of directors, kept separate accounting and tax records, and had separate facilities and operational personnel ..." *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57 at 62 (quoting *Walker,* 569 F.2d at 1171).

Defendants' supplementary answers to interrogatories. (Docket # 17, Ex. I).

All of these documents show that Star–Kist Caribe owns and operates a canning/manufacturing plant in Mayagüez, Puerto Rico and that the company sells canned tuna primarily to its parent company, Star–Kist. However, during the period prior to filing the complaint (from 1998–1999) only one of three Star–Kist Caribe's Vice Presidents had offices in Puerto Rico (Mr. Alfredo Archilla); (Docket # 17, Ex. G). Although Defendants' answers to the interrogatories are incomplete, the Court can gather that during the year 2000, only Star–Kist Caribe's President and Director, Mr. Alfredo Archilla, has offices in Puerto Rico. Star–Kist Caribe's two Vice–Presidents, Messrs. Edward J. McMenamin and Barry A. Mills have offices in Pittsburgh, PA and Newport, KY. Star–Kist's Corporate Secretary, and its three Corporate Assistant Secretaries have offices in Pittsburgh, PA and Newport, KY. Its two Assistant Treasurers for the year 2000 have offices in Long Beach, CA and Pittsburgh, PA. (*Id.*) The company's General Manager of Human Resources, Mr. Jim Huffmyer, has offices in Pittsburgh, PA, and its Comptroller, Mr. Steve Reyburn also has offices in Pittsburgh, PA. (*Id.*) In addition, the official business records, including corporate books and minutes are kept under the custody of Ms. Kimberly Kirkpatrick, Corporate Secretary, in Pittsburgh, PA.

From this evidence the Court can gather that Star–Kist Caribe's principal place of business is not as clear or easy to determine as the Defendants would have the Court believe. In addition, the Court notes that the Defendants, being in control of the information which can clarify the issue, have only filed two unsworn declarations under penalty of perjury, one by Janet Rich, Star–Kist's Corporate Secretary, and the other by Alfredo Archilla, Star–Kist Caribe's Vice–President and General Manager, both of which—with identical wording—provide conclusory statements regarding the facts in controversy. However, the unsworn declarations do state that Star–Kist Caribe pays taxes in Puerto Rico, a fact that is corroborated by Star–Kist Caribe's independent audit of financial statements for the fiscal year 1998–9. (PricewaterhouseCoopers, LLP, financial report, Docket # 23, Ex. 3).

Plaintiffs argue that applying the "nerve center test" the Court should find that Star–Kist Caribe's controlling activities occur either in Pennsylvania or Kentucky, where most of its officers and directors have offices. No discovery was provided by the Defendants regarding the location of the company's board meetings despite its being requested, but available evidence would lead the Court to believe that they do not take place in Puerto Rico at all. However, even if that were the case, the Court finds that Star–Kist Caribe' principal place of business is Puerto Rico, because the focus of the Court's inquiry is not where the ultimate power resides, but rather, where the day-to-day management of the corporation takes place, and on that issue the evidence indicates that it takes place in Puerto Rico.

In particular, the nerve center is preferable for corporations with "complex and farflung activities." *Topp. v. CompAir, Inc.*, 814 F.2d at 834. For example, in *Topp*, the First Circuit applied the "nerve center" test to ascertain the principal place of business of a corporation which had no manufacturing, purchasing or sales facilities. Rather, the corporation's "principal function [was] to provide administrative and financial services to several of its subsidiaries." 814 F.2d at 834. The subsidiaries were located in five different states and the court there noted that "[a] percentage of CompAir Inc.'s servicing activities devoted to a given subsidiary will vary from time to time, [therefore] its own nerve center (the location from which CompAir Inc. controls and directs its servicing activities) is the most realistic indication of its principal place of business." *Id.* On the other hand, the

First Circuit found that the other two tests which focus on the location of the physical operations of the corporation (i.e., factories, warehouses, sales offices) were not appropriate in that case. *Id.* n. 3.

In this case however, Star–Kist Caribe is a manufacturer of canned products who owns and operates a plant in Mayagüez. That is definitely a determinative factor for the principal place of business under the "the locus of the operations of the corporation" test. *Id.* A third test, the "center of corporate activity test" focuses on the day-to-day management of the corporation, which pursuant to Alfredo Archilla's unsworn declaration under penalty of perjury, is Puerto Rico, where the company's packaging center is managed. (Docket # 2, Attach. 2 ¶¶ 8–9, 11).

Although the Court is inclined to find that Star–Kist Caribe's principal place of business is Puerto Rico after applying the "locus of operations of the corporation" test and the "center of corporate activity" test, both Plaintiffs and Defendants have engaged in a discussion of the nerve center test and its applicability to this case. That test requires the Court to consider:

[1]　Location of corporate headquarters;

[2]　location of directors meetings;

[3]　location from where corporate income tax returns are filed;

[4]　location of corporate records;

[5]　location of principal bank accounts;

[6]　location of corporate personnel who direct the daily operations of the corporation;

[7]　place where major policy decisions are made;

[8]　place which is designated in the charter or other corporate documents as the official headquarters of the company.

*Topp v. CompAir, Inc.,* 814 F.2d at 837–8. The Defendants concede that its directors do not regularly meet in Puerto Rico (Factor # 2, above). In addition, the discovery revealed that the corporation's official business records and minutes are kept under the custody of the Corporate Secretary, Ms. Kirkpatrick, in Pennsylvania. (Factor 4, above) (*See* Docket # 17, App. G). Moreover, the scarce evidence before the Court indicates that with all probability all major policy decisions are made outside of Puerto Rico. On this issue, Plaintiffs introduced evidence which controverts Defendants' conclusory statement that Star–Kist Caribe's major decisions are made in Puerto Rico, (*See* Docket # 24 at 7),[3] and the Defendants, being in control of the information pertinent to this issue, failed to produce anything showing that they are in fact made here. Therefore, this is a factor which militates against the Defendants. (Factor # 7, above). Factor number eight (8) also works against the Defendants because the charter and other corporate documents list Delaware as the company's official or principal office. (See Docket # 17, App. G). The other factors point to Puerto Rico as the principal place of business. (Factors ## 1, 3, 5, 6) (*See* Docket # 24, Ex. 1). Although the factors are evenly divided on the "nerve center" test, the Court's finding on the other two tests that Star–Kist Caribe's principal place of business is Puerto Rico, definitely tips the scales against diversity jurisdiction.

**B. Indispensable Party**

The First Circuit has stated that once a district court has found one of the defendants to be non-diverse for purposes of diversity jurisdiction, it may dismiss the

---

**3.** For example, Plaintiffs introduced evidence showing that with the exception of the Corporation's Vice–President and now President, Alfredo Archilla, all of the Defendants' officers and top executives have offices outside of Puerto Rico. (Docket # 17. App. G). In addition, the Defendants have conceded that Star–Kist Caribe's Board of Directors does not regularly meet in Puerto Rico. In particular, a decision to transfer all of Star–Kist Caribe's can manufacturing operations to Star–Kist and other Heinz subsidiaries, was a decision not taken by the managing personnel in Puerto Rico. (*Id.*)

complaint only against that defendant if it is a dispensable party. However, if the defendant is indispensable, then the Court must dismiss the case as a whole, or remand it to state court. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668, 675 (1st Cir.1994).

In this case, the Plaintiffs have alternatively moved the Court to dismiss the complaint only against the non-diverse party— that is, assuming the Court found lack of complete diversity. The Defendants' have opposed this request citing *E & E Investment, Inc. v. Simmons Co.,* 169 F.R.D. 467, 470 (D.P.R.1996), which stands for the proposition that "where the subsidiary is the primary participant in a dispute involving both the parent and the subsidiary, the subsidiary is an indispensable party." They then argue that "more likely than not" the tuna can involved in this products liability action was manufactured in Puerto Rico, therefore it would be "highly impractical" to dismiss the complaint against Star–Kist Caribe and to maintain the action against its parent company, Star–Kist.

The Plaintiffs have indicated however, that Star–Kist Caribe is a dispensable party to this litigation because Star–Kist and Star–Kist Caribe are joint tortfeasors in a products liability action, and that each entity involved in the chain of distribution is strictly liable to the consumer. (Docket # 17 at 10).

■ It has indeed long been established that joint tortfeasors are not indispensable parties. *Temple v. Synthes Corp., Ltd.,* 498 U.S. 5, 7, 111 S.Ct. 315, 316, 112 L.Ed.2d 263 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.") (citing *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 329–330, 75 S.Ct. 865, 869, 99 L.Ed. 1122 (1955); *Bigelow v. Old Dominion Copper Mining & Smelting Co.,* 225 U.S. 111, 132, 32 S.Ct. 641, 644, 56 L.Ed. 1009 (1912)). The issue of whether or not Star–Kist Caribe is an indispensable party based on the fact that it might have canned and distributed the actual can involved in this litigation, is not dispositive of the question because Plaintiffs have plead a cause of action in products liability, where as a matter of public policy, each and every entity involved in the chain of distribution is strictly liable to the consumer. *See Ferrer v. Gen. Motors,* 100 D.P.R. 246, 257–8 (1971).

Under Fed.R.Civ.P. 19(a), a party shall be joined to an action if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a).

In turn, Rule 19(b) of the Federal Rules of Civil Procedure provides that:

> If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

The Defendants cite the case of *H.D. Corp. of Puerto Rico v. Ford Motor Co.,*

791 F.2d 987, 993 (1st Cir.1986), for the proposition that where a parent and subsidiary are both parties to a suit, the action cannot be dismissed against the parent, and maintained against the subsidiary because "it would be highly impractical to permit plaintiffs' action to proceed solely against [the parent]." However, placing that asseveration in the context of that case, the First Circuit found the non-diverse/parent party indispensable based on the following: first, that the parent had a substantial interest in the outcome of the suit; and second, that "it is clear from the face of the complaint that plaintiffs' commonwealth law claims are largely directed against the parent company." *Id.* The case involved various claims of breach of a dealership contract of which the parent was a signatory. In addition, the parent company was very much involved in the decision to terminate the dealership agreement. *Id.* Therefore, in that case it was "highly impractical" to permit plaintiffs' action to proceed solely against the subsidiary. *Id.*

Those circumstances are not present in this case however. In this case, the defendant does not controvert Plaintiffs' allegations that Star–Kist and Star–Kist Caribe are joint tortfeasors. On this point, the case-law is clear that "Rule 19 treats joint tortfeasors differently than persons jointly liable under a contract, where the general rule is that all those with a substantial interest in the contract must be joined." *E & E Investment, Inc. v. Simmons Company,* 169 F.R.D. 467 (D.P.R.1996). In fact, the First Circuit has stated that "if one thing is clear in respect to Rule 19, it is that, unlike a person vicariously liable in tort, a person potentially liable as a joint tortfeasor is not a necessary or indispensable party, but merely a permissive party subject to joinder under Rule 20." *Pujol v. Shearson American Exp., Inc.,* 877 F.2d 132, 137 (1st Cir.1989) (citations omitted).

Finally, Plaintiffs complaint does not make specific allegations against Star–Kist Caribe. Rather, Plaintiffs claim that the tuna can included in the lunch kit is a dangerous product, specially to children, and that there were no warnings in that respect. For a finding on the merits of this allegation, the place of manufacture is irrelevant. Therefore, Star–Kist and Star–Kist Caribe's motion to dismiss, **(Docket # 8)**, is **GRANTED IN PART AND DENIED IN PART.** Judgment shall be entered dismissing the complaint against Star–Kist Caribe, in accordance with the terms of this Opinion and Order.

**SO ORDERED.**