Candida Merino de WALKER et al.,
Plaintiffs, Appellees,

v.

PUEBLO INTERNATIONAL, INC.,
Defendant and Third-Party
Plaintiff, Appellant,

v.

Angel NEGRON et al., Third-Party
Defendants, Appellees.

No. 77–1022.

United States Court of Appeals,
First Circuit.

Argued Oct. 6, 1977.

Decided Jan. 27, 1978.

William L. Patton, Boston, Mass., with whom John M. Harrington, Jr., Ropes & Gray, Boston, Mass., David Rive Rivera, and Calderon, Rosa, Silva & Vargas, Hato Rey, P. R., were on brief, for defendant and third-party plaintiff, appellant.

Gabriel Hernandez Rivera, San Juan, P. R., with whom Feldstein, Gelpi, Toro & Hernandez, San Juan, P. R., were on brief, for Candida Merino de Walker, et al., plaintiffs, appellees.

Ernesto F. Rodriguez-Suris, Hato Rey, P. R., with whom Miranda Cardenas & De Corral, Hato Rey, P. R., was on brief, for Market Ins. Co., plaintiff, appellee.

Before COFFIN, Chief Judge, CAMP-BELL, Circuit Judge, CRARY, District Judge.[*]

LEVIN H. CAMPBELL, Circuit Judge.

The plaintiff-appellee in this diversity case obtained a $25,000 jury verdict for damages suffered when she was falsely accused of shoplifting at one of Pueblo's stores in San Juan. Her husband received $2,500 for his damages suffered as a consequence of the injury to his wife. The only issue presented in this appeal is whether the district court lacked subject matter jurisdiction, appellant claiming that there was no diversity of citizenship.[1]

■ Plaintiff and her husband are citizens of Puerto Rico. Defendant Pueblo International, Inc., is incorporated under the laws of Delaware. However, the place of incorporation is not necessarily determinative of citizenship, because corporations for

purposes of diversity jurisdiction have dual citizenship:

> "[A] corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business".

28 U.S.C. § 1332(c). The present case turns on whether the district court erred in ruling that Pueblo's "principal place of business" is other than Puerto Rico.

■ Defendant moved to dismiss for lack of diversity and the district court decided the issue on the basis of affidavits and documentary materials submitted by both parties. Pueblo's Executive Vice President averred that Pueblo's principal place of business was Puerto Rico. In support of this, he stated that all of Pueblo's operations, including supermarkets, retail stores and a bread factory, were conducted in Puerto Rico. He further claimed that "[m]ore than 90% of the annual gross income and net income of Pueblo, as such corporate entity, in the past and at present, is derived from business [in] Puerto Rico." The principal officers of Pueblo, including its president, treasurer and executive vice president, had their offices in Puerto Rico and all of the corporation's fiscal, accounting and operational offices were in Puerto Rico.

Pueblo's Vice President also stated that Pueblo was a holding company, owning a number of wholly owned subsidiaries, including Hills Supermarkets, Inc., a New York corporation. Hills, it was claimed, has its own board of directors and officers. Furthermore,

> "[t]he day to day operating decisions of Hills are taken by its operating Officers at the headquarters and principal office of that corporation located at Brentwood, Long Island, where Hills owns and operates its Distribution Center."

For accounting and tax purposes, Hills was said to maintain its own separate books and file its own tax returns.

---

[*] Of the Central District of California, sitting by designation.

[1] Since we conclude that the district court lacked jurisdiction, it is unnecessary to decide the question presented in Pueblo's cross appeal, whether the court erred in refusing to join appellee Market Insurance Co. as a third party defendant.

Plaintiff's attorney filed his own affidavit in opposition which summarized data concerning Pueblo and Hills taken from documents such as Pueblo's reports to shareholders, minutes of directors' meetings, and filings with the Securities & Exchange Commission. After Pueblo moved to strike this affidavit, plaintiff's attorney filed a supplementary affidavit to which were attached copies of the SEC and corporate reports which the prior affidavit had purported to summarize. The district court denied the motion to strike and admitted into the record the affidavits and documents.[2]

The reports relied on by the plaintiff establish that from 1971 through 1975 Pueblo International, Inc., regarded Hills as a "division" of the parent company. Hills was consistently referred to as such. Moreover, in representing Pueblo's financial picture in its reports, the company routinely included Hills' figures in its calculations of overall profits, losses, expenses, numbers of employees, real estate, etc. The statistics indicate that, in terms of sales and assets, Hills accounted for about 60% of the consolidated entity's activities. Pueblo's minutes of Board of Directors' meetings reveal that the affairs of Hills were routinely the subject of scrutiny and reports and that the directors participated in such major decisions as the hiring and replacement of Hills' president.

While the documents thus indicate that Pueblo was ultimately the sole beneficiary and director of Hills' corporate activities,

there is nothing in the record to undermine Pueblo's claim that the two corporations were separately incorporated, had separate boards of directors, kept separate accounting and tax records, and had separate facilities and operational personnel. And, leaving aside the activities of Hills Supermarkets Inc., there is next to nothing in the record to establish that Pueblo, in its corporate capacity, conducted any business outside Puerto Rico. Pueblo's annual reports to shareholders list "executive offices" in Carolina, Puerto Rico, and New York City. The directors' minutes also establish that several meetings were held in the New York executive offices. However, the documents do not reveal who was employed at the New York City office, what corporate affairs other than occasional directors' meetings were held there, or how much was spent annually in maintaining the office. It is not even possible to draw the inference that New York City was the regular situs of directors' meetings inasmuch as these meetings were also routinely held in Hills' headquarters on Long Island, several of Pueblo's offices in Puerto Rico and in Venezuela. No other evidence in the record, either cited by plaintiff or discovered by us, sheds further light on the character of the New York City "executive offices".

Three distinct, but not necessarily inconsistent, tests have been developed for determining where a corporation's "principal place of business" is located. *See generally* 1 J. Moore, Federal Practice, ¶ 0.77[3] (2d ed. 1977). *Scot Typewriter Co. v. Under-*

---

2. As our disposition of the case is unaffected by whether or not such materials are received, we need not decide whether plaintiff's attorney's affidavit was competent to introduce evidence taken from Pueblo's files.

In addition to considering the documentary evidence introduced by plaintiff and defendant, the district court relied on the finding of another district judge in another case in which Pueblo was a defendant that Pueblo's principal place of business was New York. *Lazus v. Pueblo International, Inc.,* Civ. Nos. 113–72, 889–71 (D.P.R. Dec. 23, 1975) (Turk, J.), *appeal dismissed sub nom. Agosto Alamo v. Pueblo International, Inc.,* Misc. No. 76–8026 (1st Cir. Apr. 1, 1976). Different evidence was introduced in the *Lazus* case than was before the

district court in the present case. Moreover, Pueblo was denied permission by this court to bring an interlocutory appeal from that ruling. And no final judgment was apparently entered in any case controlled by Judge Turk's *Lazus* ruling until after a final judgment was entered in the present case. In these circumstances, no collaterally binding effect need be given to the *Lazus* finding in the present case. *See* Restatement of Judgments, §§ 41, 43 comment a, 69(2). *Cf. Cardillo v. Zyla,* 486 F.2d 473 (1st Cir. 1973). To be sure, the district court in the present case would be properly concerned to act, insofar as it could, in concert with other district judges so as to avoid undue confusion. But this natural concern can rise no higher than the record in the instant case permits.

*wood Corp.,* 170 F.Supp. 862, 865 (S.D.N.Y. 1959), established the "nerve center" test, i. e., the center "from which [a multifaceted corporation's] officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective." Later cases have suggested that this inquiry should be limited to a "large corporate enterprise with complex and farflung activities" where only the "nerve center" can actually be termed the "principal place of business." *See Epstein v. Guilford Industries, Inc.,* 218 F.Supp. 286, 288–89 (S.D.N.Y.1963); *Anderson v. Southern Bell Telephone & Telegraph Co.,* 209 F.Supp. 921, 927 (M.D.Ga.1962). Even were we to assume that Pueblo is the type of corporation for which the "nerve center" test would be most appropriate,[3] we could not say that plaintiff has carried her burden of establishing that Pueblo has its nerve center outside Puerto Rico.[4] From the documents which plaintiff submitted, it does appear that two "executive offices" exist, one in Puerto Rico and the other in New York City. But little more can be gleaned about the New York office. In contrast, Pueblo's Executive Vice Presidents' affidavit stated that,

"Pueblo, as such corporate entity has its own accounting system, records, operating, purchasing and sales staffs at its [executive offices] at Carolina, Puerto Rico.

"The Minutes Books of Pueblo and of its predecessor corporation are kept at the above said principal offices of the Corporation . . . .

"All stock certificates of Pueblo cancelled as a result of transactions in the trading of its common stock . . . are kept and stored at the principal offices located at Carolina, Puerto Rico."

The most that can be deduced from this incomplete evidence is that a "nerve center", if one exists, is located in Puerto Rico. Certainly there is nothing to establish that the "nerve center" is in New York.

However, we need not rest our decision solely on the "nerve center" test, for under the other inquiries recognized for purposes of § 1332(c) jurisdiction, Pueblo's principal place of business must also be recognized as Puerto Rico. *Kelly v. United States Steel Corp.,* 284 F.2d 850, 854 (3d Cir. 1960), suggested that the "principal place of business" of a corporation is "the center of corporate activity," i. e., where the corporation's day-to-day management takes place. A somewhat different test focuses on "the locus of the operations of the corporation." *Inland Rubber Corp. v. Triple A Tire Service, Inc.,* 220 F.Supp. 490, 496 (S.D.N.Y.1963). The information before the district court all points to Puerto Rico as the place where Pueblo's day-to-day management and operations occur. Plaintiff suggests, however, that because Hills is the wholly owned subsidiary of Pueblo and because Hills is treated as a "division" of Pueblo, we should ignore the separate corporate identities of Hills and Pueblo. If the two were viewed as a single corporation, it is argued, Pueblo's "center of corporate activity" or "locus of . . . operations" would have to be regarded as outside Puerto Rico, since Hills accounts for about 60% of the combined entity's operations.

We do not agree that the separate corporate identities of Hills and Pueblo may be ignored. In determining whether a parent is "doing business" in a state for purposes of personal jurisdiction, the Supreme Court has held that a separately incorporated subsidiary operating in a state ordinarily may not be considered to be the parent for purposes of determining whether the parent is doing business there:

"Through ownership of the entire capital stock and otherwise, the defendant dominates the [subsidiary] corporation, immediately and completely; and exerts its control both commercially and financially

---

**3.** *See Lancer Indus., Inc. v. American Ins. Co.,* 197 F.Supp. 894, 898–99 (W.D.La.1961); *Textron Electronics, Inc. v. Unholtz-Dickie Corp.,* 193 F.Supp. 456, 459 (D.Conn.1961).

**4.** It is plaintiff's burden to prove facts sufficient to support a finding of diversity of citizenship. *Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942).

in substantially the same way, and mainly through the same individuals . . . The existence of the [subsidiary] company as a distinct corporate entity is, however, in all respects observed. Its books are kept separate. All transactions between the two corporations are represented by appropriate entries in their respective books in the same way as if the two were wholly independent corporations. . . "In the case at bar, the identity of interest may have been more complete and the exercise of control over the subsidiary more intimate than in the three cases cited, but that fact has, in the absence of an applicable statute, no legal significance. The corporation separation, though perhaps merely formal, was real. It was not pure fiction."

*Cannon Manufacturing Co. v. Cudahy Packing Co.,* 267 U.S. 333, 335, 336–37, 45 S.Ct. 250, 251, 69 L.Ed. 634 (1925) (Brandeis, J.). Later cases have continued to give effect to the separate corporate identities, suggesting that an exception might be made where parent and subsidiary "violated the integrity of the forms they chose or rendered them unreal by any course of conduct shown in the evidence." *Blount v. Peerless Chemicals (P. R.) Inc.,* 316 F.2d 695, 698 (2d Cir.), *cert. denied,* 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62 (1963). Another case has suggested that the corporate veil may be pierced where the parent/subsidiary distinction is rendered a "subterfuge" or the parent is hiding behind "a sham or dummy corporation." *Echeverry v. Kellogg Switchboard & Supply Co.,* 175 F.2d 900, 903 (2d Cir. 1949). Another case has stated that the parent may be considered amenable to suit where the subsidiary is doing business where "the corporate separation is fictitious, or . . . the parent has held the subsidiary out as its agent, or . . . the parent had exercised an undue degree of control over the subsidiary." *Velandra v. Regie Nationale des Usines Renault,* 336 F.2d 292, 296 (6th Cir. 1964) (citing cases).

A fortiori, the *Cudahy Packing* line of cases should apply in a § 1332(c) case. *See Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp.,* 461 F.2d 1140, 1142 (3d Cir. 1972). If the court may not look to the activities of a separately incorporated subsidiary for purposes of determining whether its parent is "doing business" in a state, there is no reason to look to the subsidiary to determine whether the parent has its "principal place of business" in that state. In the present case, if Hills' activities are put to one side, it is clear that Pueblo's operations are conducted almost exclusively in Puerto Rico. And there is here no occasion under the standards in *Cudahy Packing* and its progeny for disregarding or piercing Hills' separate corporate identity. There is no evidence in the record that the corporate forms were ignored. Hills appears to have remained a distinct entity in all respects with both corporations keeping separate books for accounting and tax purposes. Pueblo's presentation of consolidated profit, loss and other calculations to its shareholders in some reports does not detract from the otherwise complete fiscal and operational segregation of the two corporations. The fact that Pueblo owned all of Hills' stock, and the control incident to that ownership, do not justify ignoring the otherwise separate character of the two corporations. We need not go so far as to say that the corporate separation must be shown to be a "sham" or "subterfuge"; here the separation "though perhaps merely formal, was real. It was not pure fiction." *Cudahy Packing Co., supra.*

Since plaintiff did not establish that Pueblo's "nerve center" or any substantial part of its operations was outside Puerto Rico, we conclude that the district court erred in finding that there was diversity of citizenship.[5]

*Reversed and remanded with instructions to dismiss the complaint.*

---

5. Our holding in this case is not collaterally binding on different litigants in pending or future cases involving Pueblo since they were not parties to this litigation. Were a future plaintiff to come up with new and different facts as to the locus of Pueblo's operations, it might yet be established consistently with our present holding, that Pueblo's principal place of business is other than Puerto Rico.