Ronald SALZANO–PASCUZZI and his wife Gloria Rivera and the conjugal partnership comprised by them, Plaintiffs,

v.

LUCAS INSERTCO PHARMACEUTICAL PRINTING CO. OF P.R.; John D. Lucas Pharmaceutical and Health Care Printing Company of Puerto Rico, Inc.; John D. Lucas Printing Company, Defendants.

No. Civ. 00–1443CCC.

United States District Court, D. Puerto Rico.

Feb. 23, 2001.

Rafael M. Santiago–Rosa, Marichal & Hernández, LLP, San Juan, PR, for plaintiffs.

Heriberto J. Burgos, Fiddler, Rodríguez & González, Lawrence J. Gebhardt (pro hac vice), Gebhardt & Smith LLP, San Juan, PR, for defendants.

## REMAND ORDER

CEREZO, District Judge.

The complaint in this case, removed pursuant to 28 U.S.C. § 1332, was originally filed in the Puerto Rico Court of First Instance for the Municipality of Bayamón, Puerto Rico, on March 10, 2000. The plaintiff Ronald Salzano–Pascuzzi prayed for a declaratory judgment pronouncing null and void certain non-competition and non-solicitation covenants contained in an employment agreement into which he entered with the defendants.

Pending disposition before this Court are plaintiffs' Motion to Remand for Lack of Jurisdiction filed on April 20, 2000 (**docket entry** 3), defendants' Opposition filed on May 4, 2000 (**docket entry 4**), Supplement to Defendants' Opposition filed on May 24, 2000 (**docket entry 7**) and the Reply to Defendant's Opposition filed on November 16, 2000 (**docket entry 9**).

Plaintiffs, who are both residents of Dorado, Puerto Rico, have moved to remand this action to the Puerto Rico Court of First Instance for the Municipality of Bayamón for lack of full and complete diversity of citizenship among the above-captioned litigants. Specifically, it is Salzano–Pascuzzi's contention that defendant Lucas Insertco Pharmaceutical Printing Company of Puerto Rico, Inc. (Lucas PR) has its principal place of business in San Germán, Puerto Rico.

The defendants have opposed plaintiffs' request to remand this action to local court arguing that (a) the jurisdictional issue posed before this Court has already been addressed and decided in a related case[1] by Senior Judge Alexander Harvey of the United States District Court for the District of Maryland; and (b) that pursuant to Judge Harvey's decision, after the application of the "nerve center test," the principal place of business of Lucas PR was determined to be Maryland.

After a careful and thorough analysis of the record, including motions, sworn statements, transcripts, and other documents submitted to this court for its review, we find that complete diversity is lacking and, therefore, there is no subject matter jurisdiction to adjudicate the substantive claims and controversies in this case. A review of the record reveals that the following facts are uncontested:

1) Lucas PR is a Delaware corporation, duly authorized to do business under the Laws of the Commonwealth of Puerto Rico;

2) Lucas PR is a wholly owned subsidiary of Lucas Maryland;

3) Lucas PR is deemed to be a corporation in good standing having complied with the filing of the corresponding annual reports at the Corporate Registry of the Puerto Rico State Department;

4) Lucas PR is the recipient of a tax exemption granted by the Governor of Puerto Rico granted pursuant to the Puerto Rico Tax Incentives Act of 1987;

5) Lucas PR's sole business operation is a pharmaceutical insert manufacturing plant located in San Germán, Puerto Rico;

6) Lucas PR keeps accounting and tax records, separate and distinct, from those of its parent company. There is, annually, a complete audit by a local accounting firm that issues certified financial statements for the company, and that also prepares its local income tax, municipal license tax, and property tax returns;

---

**1.** *Lucas–Insertco Pharmaceutical Printing Company of Maryland LLC, et al v. Ronald Salzano,* Civil Number AMD 00–807.

7) Lucas PR's transactions with its parent company are represented by appropriate entries of account in their respective books, which are kept, in the case of the former, separate from the latter, in San Germán, Puerto Rico;

8) Lucas PR's day-to-day management and operational decisions are made in Puerto Rico;

9) Lucas PR's operational, payroll and depository bank accounts are kept with Banco Popular de Puerto Rico, San Germán Branch; and

10) Lucas PR's production is sold to customers for their manufacturing operations in Puerto Rico.

It is defendants' position that the jurisdictional issue posed before us has already been decided by Judge Harvey in the aforementioned related case which is before Senior Judge Jaime Pieras pursuant to a change of venue granted by the Maryland court. Specifically, the defendants submit in their opposition to the remand that, although agreeing with Salsano–Pascuzzi's challenge to the venue and transfer of said case to this District, Judge Harvey found that the principal place of business of Lucas PR was Maryland and that, given that complete diversity exists among the litigants in that case, subject matter jurisdiction is present.

The defendant's further argued in their opposition that no "additional facts beyond those which were presented to Judge Harvey have been presented by the plaintiffs, despite document and deposition discovery conducted in the companion case."[2] Defendants' cite in support of their contention the First Circuit case of *Media Duplication Services v. HDG Software*, 928 F.2d 1228 (1st Cir.1991): "A district court's determination of citizenship for purposes of

diversity jurisdiction may not be set aside unless it is clearly erroneous."

Contrary to the defendants' position, the plaintiffs have consistently argued that, although Judge Harvey issued an Interlocutory oral opinion determining that Lucas PR's citizenship was Maryland with regard to the jurisdictional issue initially before him, he clearly and explicitly contemplated further jurisdictional discovery. In its relevant part, Judge Harvey's Oral Opinion states: *"Of course, if the parties wish to develop the facts further, that can be done by discovery* ... So applying the principles of *Peterson* and *Topp*, I am satisfied that *there is diversity, at least insofar as the record is concerned at this early stage of the case."*

As anticipated by Judge Harvey, further expedited discovery was conducted on April 13 and 14, 2000, in the form of depositions, after the aforementioned related case was transferred to the District of Puerto Rico under civil case number 00–1456JP.

It is the plaintiffs' contention that after considering the facts uncovered in this discovery in light of the criteria established in the First Circuit's decision of *Topp v. CompAir*, 814 F.2d 830 (1st Cir.1987), and other interpretative case law, the "nerve center test" is clearly inapplicable.

Federal Courts are courts of limited jurisdiction. U.S. Const., Art. III, Clause 2. The defendants, in removing this case from the local courts, have invoked federal jurisdiction under Section 1332 of the United States Code, which provides in its subsection (c) as follows:

For the purposes of this section and section 1441 of this tide—(1) a corporation shall be deemed to be a citizen of any State by which it has been incorpo-

---

2. *See* defendants' Opposition to the Remand at page 2.

rated and of the State where it has its principal place of business.

28 U.S.C. § 1332(c)(1) (Emphasis added.)

■ Diversity must be "complete," which means that every party on one side of the action must be a citizen of a different state from every party on the other side. One instance of common citizenship will destroy diversity. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939).

The First Circuit has adopted three (3) tests for determining the principal place in which a corporation does business for the purpose of diversity jurisdiction:

1) the **"nerve center test,"** which applicable case law has stated should be limited to a "large corporate enterprise with complex and far flung activities" where only the nerve center can actually be termed as the "principal place of business." *Topp, supra; Lugo Vina v. Pueblo International, Inc.*, 574 F.2d 41 (1st Cir.1978);

2) the **"center of corporate activity test,"** which searches for the location where the corporation's day-to-day management takes place. *Taber Partners v. Merit Builders, Inc.*, 987 F.2d 57, 61 (1st Cir.1993) *supra; Topp, supra; de Walker v. Pueblo International, Inc.*, 569 F.2d 1169, 1172 (1st Cir.1978), and

3) the **"locus of operations test,"** which searches for the location of the corporation's actual physical operations. *Taber, supra; Topp, supra; de Walker, supra.*

As stated by the Circuit Court in *Topp*, the nerve-center test was developed in the context of corporations with **complex and far flung operations.** The Circuit Court also admonished that the nerve-center test does not grant a free license to ignore the separate corporate identity of the corpora-

tion whose citizenship is sought. *See Topp, supra*, at page 835.

Footnote 4 at page 835 of *Topp* is also exceptionally relevant:

We recognize, of course, that the analysis we prescribe may be accused of overlooking the "real" nerve center, in that only those who control the parent of the corporation in question may, in truth, "call the shots." Perhaps the term "nerve center" is confusing: what is sought, except in rare circumstances where the corporate veil is properly disregarded, is the operational center of the corporation in question, giving proper regard to the corporate identity-not necessarily the ultimate "nerve center," in the sense of the place where the real power resides.

Regarding corporate separateness between parent and subsidiary the Circuit Court concluded in *Topp, supra*, at pages 835 through 836, that as:

... the Third Circuit has observed, the case law strongly shows that where the corporate separation between a parent and a subsidiary, *though perhaps merely formal*, is real and carefully maintained, the separate place of business of the subsidiary is recognized in determining jurisdiction, even though the parent corporation exerts a high degree of control through ownership and otherwise.

(Our emphasis.)

■ The issue of subject matter jurisdiction may be raised at any time during a proceeding, either by the parties or by the court, *sua sponte*. At any point, if it becomes clear that subject matter jurisdiction is lacking, the court must dismiss the action. *NcNutt v. General Motors Accept. Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126, 2 L.Ed. 229 (1804); *Chaparro–Febus v. Local 1575*, 983 F.2d 325, 329 n. 4 (1st Cir.1992).

As stated by this Court in *Savis Inc. v. Warner Lambert, Inc.*, 967 F.Supp. 632 (D.P.R.1997), and the First Circuit in *Topp,* the general rule regarding the determination of the principal place of business, and, thus, of citizenship with regard to a diversity determination, of a corporation engaged in only one business in one place (Puerto Rico), even assuming that its parent company exerts a high degree of control through ownership and otherwise, the state of operations is said to be controlling when determining said corporation's principal place of business.

Even if Lucas Maryland owns all of the issued and outstanding shares of stock of Lucas PR, and incidental to that ownership the former exerts a high degree of control over the latter, we would not be justified in ignoring their otherwise separate characters.

Based on the uncontested facts in light of the newly developed profile, upholding Judge Harvey's determination would be tantamount to ignoring the separate corporate identity of Lucas PR, which would be clearly erroneous. The record developed in this case clearly reflects that Lucas PR's operations are neither complex nor far flung. It also reflects that Lucas PR has dutifully complied with all corporate formalities required of a foreign corporation doing business under the laws of the Commonwealth of Puerto Rico. Its operational center is in San Germán, Puerto Rico, from which it conducts all of its business.

The Court finds that the principal place of operations, and therefore, the principal place of business, of Lucas PR is San Germán, Puerto Rico, and that full and complete diversity does not exist among the litigants. For this reason, we are precluded from entertaining and adjudicating the matters presented. Accordingly, the Court hereby ORDERS this action RE-MANDED to the Court of First Instance for the Municipality of Bayamón.

SO ORDERED.