Jesús SÁNCHEZ, et al, Plaintiffs,

v.

UHS OF PUERTO RICO,
INC., Defendant.

No. CIV. 01–1634(HL).

United States District Court,
D. Puerto Rico.

Sept. 24, 2002.

Jeffrey M. Williams–English, Edward W. Hill–Tollinche, Indiano & Williams, PSC, San Juan, PR, for plaintiffs.

Ana M. Otero–Cintron, Otero & Lopez, LLP, San Juan, PR, for defendant.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is Defendant UHS of Puerto Rico, Inc.'s ("UHSPR") motion to dismiss this claim for lack of subject matter jurisdiction. Defendant is incorporated in Delaware. Plaintiffs Jesús Sánchez, his wife, and their conjugal partnership (collectively "Sánchez") filed this action for damages pursuant to article 1802 of the Puerto Rico Civil Code.[1] They are residents of Puerto Rico. Plaintiffs' claims are based on alleged negligent medical treatment that Sánchez received at Hospital San Francisco in Río Piedras, Puerto Rico. They claim that the Court has jurisdiction to hear this matter on the grounds that there is complete diversity of the parties.[2] In its motion, UHSPR argues that its principal place of business is in Puerto Rico and that therefore diversity is lacking.

---

1. 31 P.R.Laws Ann. § 5141 (1990).

2. 28 U.S.C.A. § 1332 (West 1993 & Supp. 2002).

After the parties briefed this issue, the Court held an evidentiary hearing. Milton Cruz, the chief executive officer of UHSPR and Bruce Gilbert, the secretary of the corporation's board, testified at the hearing. The parties also submitted a number of joint exhibits. The evidence in the record portrays the following scenario. UHSPR was incorporated in Delaware in December 1997.[3] It is a wholly owned subsidiary of UHS of Delaware, Inc., which in turn is wholly owned by Universal Health Services, Inc. At the time of its incorporation, UHSPR did not do any business. It was established with the intention of buying hospitals.[4] In June 1998 it purchased four hospitals, including Hospital San Francisco, in Puerto Rico and merged with the three corporations that owned these hospitals. UHSPR was the surviving corporation of the merger.[5] The certificate of merger filed with the State of Delaware stated that the surviving corporation's principal place of business was King of Prussia, Pennsylvania.[6] UHSPR's directors, president, vice president, treasurer, and secretary all have their address in King of Prussia. The corporation's minute book is also kept there.[7]

UHSPR has approximately 2,500 employees. These employees work at the corporation's four hospitals, on the chief executive officer's staff, and in a record-keeping office which serves the four hospitals. All these employees live and work in Puerto Rico.[8] Each of the four hospitals has its own board of governors and chief executive officer.[9] The governors and chief executive officers are responsible for the administration of their respective hospitals. These officials all reside in Puerto Rico. Their duties include preparing a budget for the hospital.[10] UHSPR's chief executive officer then prepares and submits an annual budget for the entire corporation to the board of directors in Pennsylvania for its approval. Large capital expenditures have to be approved by the directors in Pennsylvania as part of the annual budget process.[11]

All of UHSPR's assets are located in Puerto Rico.[12] It does no business in Pennsylvania; all of its income is generated by its Puerto Rico hospitals.[13] The corporation's hospitals use Puerto Rico banks, and its employee retirement plan is managed by a bank in Puerto Rico.[14] UHSPR pays Puerto Rico income taxes and Puerto Rico municipal taxes; it does not pay taxes for any state.[15] It files financial statements with the Puerto Rico Department of State.[16] It also is an employer for purposes of Puerto Rico's worker compensa-

3. Docket no. 7, exhibit 1.

4. Evidentiary hearing, testimony of Bruce Gilbert.

5. Docket no. 7, exhibit 2; evidentiary hearing, testimony of Bruce Gilbert.

6. Docket no. 7, exhibit 2.

7. Docket no. 10, exhibit 2.

8. Evidentiary hearing, testimony of Milton Cruz.

9. Id.

10. Id.; docket no. 7, exhibit 3.

11. Evidentiary hearing, testimony of Milton Cruz.

12. Id.

13. Evidentiary hearing, testimony of Bruce Gilbert & Milton Cruz.

14. Docket no. 10, exhibit 2; evidentiary hearing, joint exhibit III.

15. Docket no. 10, exhibit 2; evidentiary hearing, joint exhibit IV.

16. Evidentiary hearing, testimony of Milton Cruz.

tion fund.[17] Each hospital has its own human resources office to deal with personnel matters, and hiring and firing decisions are made by the local management of each hospital.[18] Payroll checks are issued to UHSPR employees by the hospitals in Puerto Rico.[19] Also, UHSPR has a central office in Puerto Rico for maintaining its information system, keeping records, and storing files on accounts payable and receivable.[20]

Sánchez alleged that any purchase of equipment or supplies by UHSPR of over one thousand dollars had to be approved by corporate offices outside of Puerto Rico. Cruz explained that Universal Health Services, the parent corporation, owned a number of subsidiaries which owned and operated hospitals and that, rather than have each individual hospital purchase a particular item of equipment, its policy was to pool all its hospitals' purchases into one transaction in order to make bulk purchases at lower prices per unit. Therefore, such purchases are often paid for by one of Universal Health Service's other corporations. Ultimately, however, this expense is charged back to UHSPR.[21]

The chief executive officer of UHSPR has his offices on the grounds of one of the hospitals. His marketing director and in-house counsel also have their offices there. Day-to-day administrative, personnel, and managerial decisions are made either by the chief executive officer or lower-level managers to whom such authority has

been delegated. All these decision-makers are in Puerto Rico.[22] Hospital supplies and medicines are purchased in Puerto Rico.[23]

Based on these facts, UHSPR claims that its principal place of business is in Puerto Rico. Sánchez disputes this contention. For the reasons set forth below, the Court finds UHSPR's arguments more persuasive and grants its motion to dismiss.

## DISCUSSION

■■■■ UHSPR argues that its principal place of business is in Puerto Rico and that therefore the Court lacks diversity jurisdiction to hear this case. Once diversity jurisdiction has been challenged, the party invoking the court's subject matter jurisdiction has the burden of proving by a preponderance of the evidence facts that support the allegation of jurisdiction.[24] A corporation is deemed to be a citizen of the state in which it is incorporated and of the state where it has its principal place of business.[25] If the party alleging jurisdiction adduces inadequate evidence to establish the corporation's principal place of business, there is inadequate support for invoking the court's jurisdiction.[26]

■■■■ In the determination of a corporation's principal place of business, the court must focus only on the business activities of the corporation whose principal place of business is at issue.[27] In the First Circuit, there are three distinct tests for a court to use in determining a corporation's

17. *Id.*

18. *Id.*

19. *Id.;* docket no. 10, exhibit 2.

20. Evidentiary hearing, testimony of Milton Cruz.

21. *Id.*

22. *Id.*

23. *Id.*

24. *Bank One, Texas, N.A. v. Montle,* 964 F.2d 48, 50 (1st Cir.1992).

25. 28 U.S.C.A. § 1332(c)(1).

26. *Media Duplication Services, Ltd. v. HDG Software, Inc.,* 928 F.2d 1228, 1236 (1st Cir. 1991).

27. *Taber Partners, I v. Merit Builders, Inc.,* 987 F.2d 57, 62–63 (1st Cir.1993).

principal place of business: (1) the "nerve center" test, (2) the "center of corporate activity" test, and (3) the "locus of the operations of the corporation" test.[28] These three tests often merge and overlap.[29] Generally, if a corporation is engaged in only one type of business and its operations occur all in one state, that state will be the corporation's principal place of business, even though its policy and administrative decisions may be made elsewhere.[30]

■ Sánchez argues that the nerve center test should be applied and that its application demonstrates that UHSPR is a Pennsylvania corporation. The Court disagrees for two reasons. First, the nerve center test is appropriate when the corporation is a holding company with complex and far-flung activities, and where only the nerve center—the site from which the officers control all activities in furtherance of the corporation's objectives—can fairly be deemed to be the principal place of business.[31] This test is best used when a corporation's operations are spread out over many different jurisdictions, thereby making an analysis of the location of the corporation's physical operations unhelpful.[32] In the present case, the structure of UHSPR is not such that the nerve center test would be appropriate. The corporation can hardly be described as far-flung. It has a presence in only two places: Pennsylvania, where the board of directors sits, and Puerto Rico, where its physical operations are located. The set of possible

principal places of business is thus limited to these two jurisdictions. Moreover, UHSPR is not a holding company. The evidence demonstrates that the corporation's business is the ownership and management of four hospitals in Puerto Rico. Therefore, the Court finds that the nerve center test is not the appropriate filter with which to view the present issue.[33]

■ There is a second reason why the Court is not persuaded by Sánchez' arguments. Even if the Court were to apply the nerve center test to the present case, it would not carry the day. A court applying this test should consider (1) the location of the corporation's headquarters, (2) the site of the directors' meetings, (3) the place where income tax returns are filed, (4) the place where corporate records are kept, (5) the location of the corporation's principal bank accounts, (6) the place where officials manage the corporation's daily activities, (7) the location where major policy decisions are made, and (8) the location designated in corporate documents as the company's official headquarters.[34]

In the present case, UHSPR files income taxes in Puerto Rico, the officials who manage its daily operations are all in Puerto Rico, and its bank accounts are here. Thus, the third, fifth, and sixth factors favor a finding that the nerve center is Puerto Rico. The corporation's board of directors meet in Pennsylvania and it has filed corporate documents which state that Pennsylvania is its principal place of busi-

---

28. *Id.* at 60–61.

29. *Topp v. CompAir, Inc.,* 814 F.2d 830, 834 (1st Cir.1987).

30. *Savis, Inc. v. Warner Lambert, Inc.,* 967 F.Supp. 632, 638 (D.P.R.1997).

31. *Topp,* 814 F.2d at 834; *Lugo–Vina v. Pueblo Int'l, Inc.,* 574 F.2d 41, 43 & n. 2 (1st Cir.1978); *de Walker v. Pueblo Int'l, Inc.,* 569 F.2d 1169, 1171–72 (1st Cir.1978).

32. *Topp,* 814 F.2d at 834 n. 3; *Savis,* 967 F.Supp. at 638.

33. *See Savis,* 967 F.Supp. at 638 (Nerve center test not applicable when all of corporation's operations were located in Puerto Rico).

34. *Topp,* 814 F.2d at 837–38; *Del Rosario–Ortega v. Star–Kist Caribe, Inc.,* 130 F.Supp.2d 277, 283 (D.P.R.2001).

ness. Therefore, the second and eighth factors favor Pennsylvania. The first, fourth, and seventh factors, however, could be construed either way. The company has offices in both Pennsylvania and Puerto Rico; it keeps corporate records in both places; and major policy decisions are made in both jurisdictions. Taken as a whole, these factors do not clearly establish that either Pennsylvania or Puerto Rico is UHSPR's principal place of business. Thus, the nerve center test does not provide a ready resolution of this issue.

■ While the nerve center test does not clearly answer the question of what is UHSPR's principal place of business, the other two tests do. The center of corporate activity test focuses on where the corporation's day-to-day management takes place.[35] The locus of the corporation's operations test is based on the location of the bulk of the corporation's actual physical operations.[36] The record indicates that Puerto Rico is the site of all the corporation's physical operations, all the corporation's income is generated here, and all its assets are here. The record further shows that all UHSPR employees live and work in Puerto Rico, the hospitals' personnel decisions are made here, the company's employee retirement plan is managed here, and payroll checks are issued from here. The chief executive officer and his staff work in Puerto Rico, day-to-day operational decisions are made by managerial staff in Puerto Rico, the hospitals' banks are located here, and the corporation maintains a record center in Puerto

Rico which keeps files on its accounts payable and receivable. Furthermore, UHSPR pays Puerto Rico commonwealth and municipal taxes; files financial statements with the Puerto Rico Department of State; and is an employer for purposes of Puerto Rico's worker compensation fund. UHSPR does no business in Pennsylvania and does not pay Pennsylvania state taxes. Both the center of corporate activity test and the locus of operations test overwhelmingly favor a finding that UHSPR's principal place of business is Puerto Rico.

■ Sánchez points to a certificate of merger which UHSPR filed with the state of Delaware and which stated that Pennsylvania was its principal place of business. He claims that this filing is enough to establish diversity. The Court is unaware of any case law which affords dispositive weight to such an admission in a corporate filing. The principal place of business listed in a corporate filings is one of many factors to be considered in the application of the nerve center test.[37] It does not, however, carry sufficient weight to be, by itself, dispositive of this issue.

Sánchez also argues that because the board of directors sits in Pennsylvania, makes final approval of budgetary matters, and keeps its corporate minute book there, that state should be the principal place of business. Generally, when a corporation has all of its operations and employees in one jurisdiction, that jurisdiction will be its principal place of business, even though top-level decisions may be made elsewhere.[38] So it is here. The day-to-day

---

**35.** *de Walker,* 569 F.2d at 1172; *Morales–Tirado v. Hilton Int'l Co.,* 783 F.Supp. 722, 723 (D.P.R.1992).

**36.** *Topp,* 814 F.2d at 834.

**37.** *Topp,* 814 F.2d at 837–38.

**38.** *See Del Rosario–Ortega,* 130 F.Supp.2d at 282–83 ("[F]ocus of the Court's inquiry is not

where the ultimate power resides, but rather, where the day-to-day management of the corporation takes place...."); *Savis,* 967 F.Supp. at 638–39 (Principal place of business was Puerto Rico where substantially all business activities occurred here, even though policy and administrative decisions were made elsewhere); *Rivera v. Pepsico Puerto Rico, Inc.,* 936 F.Supp. 45, 47–49 (D.P.R. 1996) (same); *see also Salzano–Pascuzzi v.*

management and operations of UHSPR all occur in Puerto Rico. All its income is derived here, and all its employees work here. The corporation's *raison d'être* is to own and manage four hospitals in Puerto Rico. Virtually all of the activities geared towards fulfilling this purpose occur here. Although final decisions on certain matters may be made by the board of directors in Pennsylvania, the center of the corporation's activities and the locus of its operations are indisputably Puerto Rico.

Based on all of this evidence, the Court finds that Sánchez has failed to meet his burden of showing that UHSPR's principal place of business is not Puerto Rico. Therefore, there is no diversity jurisdiction. Accordingly, the Court grants UHSPR's motion to dismiss (docket no. 7). Judgment shall be entered accordingly dismissing this case without prejudice.

**IT IS SO ORDERED.**

*Lucas    Insertco    Pharmaceutical,*    135    F.Supp.2d 277, 281 (D.P.R.2001).