**FORD MOTOR CREDIT COMPANY OF PUERTO RICO, INC.**
**Plaintiff,**

v.

**CARIBE FORD INC., et al. Defendants.**

**No. CIV. 02–2662(PG).**

United States District Court,
D. Puerto Rico.

Feb. 28, 2003.

Hermann D. Bauer–Alvarez, O'Neill & Borges, San Juan, PR, for Ford Motor Credit Company, plaintiff.

Kenneth L. Paretti, A. Edward Quinton, Adams & Quinton, P.A., Miami, FL, David K. Rodriguez–Encarnacio, San Juan, for Caribe Ford, Inc., Gary Fronrath, Dixie Challinor, Conjugal Partnership Fronrath–Challinor, Robert Fronrath, Jane Doe 02CV2662, Conjugal Partnership Fronrath–Doe, Steven Westphal, Gwen Westphal, Conjugal Partnership Westphal–Westphal, defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

### INTRODUCTION

This case was removed to this Court from a Puerto Rico Court of First Instance by Defendants Caribe Ford, Inc. ("Caribe Ford"), Robert Fronrath, Gary Fronrath, Steven Westphal and his wife, Gwen Westphal (collectively hereinafter "Defendants"), on November 12, 2002, a day before a scheduled emergency hearing was to take place in state court for the attachment of Plaintiff's collateral. Plaintiff, Ford Motor Credit Company of Puerto Rico, Inc. ("Ford"), asked this Court to schedule an urgent hearing to cover the same issues that were to be covered in the state court hearing, and additionally, to contest the subject matter jurisdiction of this Court over its claims. (*See* Docket No. 8). Plaintiff's claims are strictly breach of contract claims brought pursuant to state law and Defendants' removal of this case to federal court was made exclusively pursuant to 28 U.S.C. § 1332. Ford argues that there is no complete diversity between the parties to the case because Caribe Ford's principal place of business is Puerto Rico, not Florida.

The parties asked to conduct limited jurisdictional discovery before the urgent hearing which was scheduled to be heard by this Court on December 19, 2002. On the day set for the hearing, Defendants filed an informative motion (Docket No. 22) notifying the Court of Caribe Ford's intention to withdraw its notice of removal and request remand of the case to state

court. The depositions that were to be taken in preparation for the hearing never took place as a result of Defendants' notification to Plaintiff that they would seek remand of their own removal. We must point out that in "Defendant's Notice of Withdrawal of Notice of Removal" (Docket No. 21), Caribe Ford does not recognize the lack of subject matter jurisdiction for this Court to hear this case. It explains that its decision to withdraw the removal was taken not because they understand that this Court lacks subject matter jurisdiction but instead to avoid the expenses of jurisdictional discovery.

Pending before this Court is Plaintiff's "Request for Just Costs and Actual Expenses Including Attorneys' Fees, Resulting from Caribe Ford, Inc.'s Improvident Removal" (Docket No. 25), which was supplemented by a "Motion Submitting Bill of Costs and Actual Expenses, And Request for Leave to Reply to Defendants' Memorandum of Law in Opposition to Plaintiffs' [sic] Request for Just Costs and Actual Expenses." (Docket No. 32). Defendants have filed opposition papers to these requests. (Docket Nos. 30 and 33). Plaintiff has also recently filed "Ford Credit's Reply to Defendants' Opposition to Request for Just Costs and Actual Expenses Including Attorneys' Fees, Resulting from Caribe Ford, Inc.'s Improvident Removal and Motion Submitting Bill of Costs." (Tendered). Plaintiff seeks an award of attorney's fees and expenses pursuant to 28 U.S.C. § 1447(c) and 28 U.S.C. § 1927.

Before analyzing the parties' contentions, we note that the adjudication of these motions is particularly unique in this case where Defendants themselves have asked for the remand and in doing so, they have abstained from recognizing the lack of subject matter jurisdiction this Court has over the claims brought against them.

## DISCUSSION

### Award of Fees and Expenses in Removal Cases

The relevant sections pursuant to which Plaintiff seeks an award of fees and expenses provide the following: "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

The more general section invoked by Plaintiff that is not limited to removal cases states that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

The burden of establishing federal diversity jurisdiction falls on the removing party. *Beichler v. Citigroup, Inc.*, 241 F.Supp.2d 696, 698–99 (S.D.Miss.2003). Even though a defendant's position in this respect may be fairly supportable, an award of attorney fees for wrongful removal is proper when removal is wrong as a matter of law. *Hofler v. Aetna U.S. Healthcare of California, Inc.*, 296 F.3d 764, 770 (9th Cir.2002); *see also Trawick v. Asbury MS Gray–Daniels, LLC*, 244 F.Supp.2d 697, 699 (S.D.Miss.2003) ("Because the jurisdictional basis relied upon by Defendants in their Notice of Removal was fundamentally erroneous, Plaintiffs should be awarded the attorney's fees and costs incurred by them which directly re-

late to the removal and remand of this case.") The "fee award rendered under such circumstances is not punitive;" "it simply reimburses plaintiffs for wholly unnecessary litigation costs inflicted by the defendants." *Id.* Hence, it is not necessary to find bad faith or improper purpose by the removing party in order to award fees and expenses. *Graham Commercial Realty Inc. v. Shamsi,* 75 F.Supp.2d 1371, 1373 (N.D.Ga.1998).

"An award of attorneys' fees is solely in the discretion of the Court." *Shamsi,* 75 F.Supp.2d at 1373; *see also Hobbs v. Blue Cross Shield of Ala.,* 276 F.3d 1236, 1243 (11th Cir.2001). In determining whether or not to grant a request for such an award, the court must conduct an "independent inquiry into the reasonableness" of attorney fees requested. *Huffman v. Saul Holdings Ltd. Partnership,* 262 F.3d 1128, 1134 (10th Cir.2001). A plaintiff shall not be compensated for charges incurred as result of unreasonable billing practices, rather than as a result of improper removal. *Huffman v. Saul Holdings Ltd. Partnership,* 262 F.3d 1128, 1134–35 (10th Cir.2001).

*Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1332*

This action was brought to this District pursuant to the federal removal statute which provides in part that an action may be removed from state court when the district courts of the United States have original jurisdiction over the action. 28 U.S.C. § 1441. Defendants maintained in their "Notice of Removal" (Docket No. 1) that this court had original jurisdiction over this case pursuant to 28 U.S.C. § 1332, the diversity jurisdiction statute. Section 1332 requires complete diversity,

that is each plaintiff must have a different citizenship from each defendant, and for its purposes, a corporation is deemed to be a citizen of the state in which it has been incorporated **and** the state where it has its principal place of business. 28 U.S.C. § 1332. Upon reviewing the record of this case, we find it is uncontroverted that Caribe Ford is incorporated in the State of Florida. However, the parties are in disagreement as to where Caribe Ford's principal place of business is, and this Court must resolve this issue to determine whether, at this juncture, an award of costs to Plaintiff is appropriate in this case.

The First Circuit has established "three distinct but not necessarily inconsistent" tests for determining where a corporation's principal place of business is.[1] *Taber Partners, I v. Merit Builders, Inc.,* 987 F.2d 57, 61 (1st Cir.1993); *Topp v. CompAir Inc.,* 814 F.2d 830, 834 (1st Cir.1987); *Walker v. Pueblo Int'l, Inc.,* 569 F.2d 1169, 1171–72 (1st Cir.1978). The first is the "nerve center" test which is focused on where the corporation's activities are controlled and directed. *Id.* The second one is the "center of the corporate activity test" which examines the location of the corporation's day-to-day management. *Id.* The third and final test is the "locus of operations of the corporation" test which examines the location of the corporation's actual physical operations. *Id.*

In *Ponce Roofing Inc. v. Roumel Corp.,* this Court did not find it necessary to distinguish between the outcome under each different test and therefore, it did not explain which test should be applied under different set of circumstances nor did it discuss whether one test should be given

---

1. The three lead First Circuit cases that make reference to these three tests examine the issues in the context of a parent/subsidiary situation where the Court tries to determine whether the corporate identity of the subsidiary is detached enough from the parent so that the determination of its principal place of business can be made independently.

more weight than the other. 190 F.Supp.2d 264, 266 (D.P.R.2002). There, this District found that regardless of what test was employed, since Roumel's main corporate offices, from which it exercised general supervision and conducted the day-to-day management were in Detroit, then Michigan and not Puerto Rico was its principal place of business. *Id.* at 266. The First Circuit has not elaborated on the issue of which test should be given more weight or when each should be applied over the others.[2] *See Caribbean Mushroom Co., Inc. v. Gov't Dev. Bank,* 980 F.Supp. 620, 627 (D.P.R.1997) ("Despite setting up a variety of distinct tests, however, the jurisprudence from this circuit provides little guidance as to when each test should apply, leading many courts facing the issue to apply each and every available test in order to avoid having to choose which test to apply.") Notwithstanding the lack of concrete guidance with respect to the application of these tests, it has been suggested in this District that "the application of these tests must be consistent because each corporation can have only one principal place of business." *Caribbean Mushroom Co., Inc. v. Gov't Dev. Bank,* 980 F.Supp. 620, 627 (D.P.R. 1997). But because the outcome under the three tests is not always the same, it must be that each test is more or less suitable for different categories or types of cases.

This, in fact, has been suggested by the First Circuit which has classified the application of the "nerve center" test, and has stated that it "...was developed for application in cases involving 'large corporate enterprises with complex and far-flung ac-

tivities where only the "nerve center" can be termed principal place of business,'" *Lugo–Vina v. Pueblo Int'l Inc.,* 574 F.2d 41, 43 (1st Cir.1978) (quoting *Walker,* 569 F.2d at 1172); *see also Topp,* 814 F.2d at 834; *Caribbean Mushroom,* 980 F.Supp. 620, and " ... where the place[s] of operations logically cannot be used to determined a corporation's principal place of business." 13 B *Charles A. Wright, Arthur R. Miller, & Edward H. Cooper,* Federal Practice and Procedure § 3625 at 635 (3d ed.1998). In *Lugo–Vina,* the Circuit Court also stated that the "nerve center" test was most appropriate in the case of a holding company. 574 F.2d at 44, n. 2.

The First Circuit has viewed evidence of where a company maintains its general ledger, corporate minutes book and register of unissued stock, its own bank accounts, and its own executive offices as evidence of where its principal place of business is under the "never center" test. *Topp,* 814 F.2d at 837. Therefore, solely under this test and pursuant to Defendants' allegations in their opposition papers, it is possible that Caribe Ford's principal place of business would be thought of as Florida. But since we have come across precedent suggesting the "nerve test" should not be applied in cases such as the instant one, we will not consider this test in determining whether as a matter of law, Caribe Ford's principal place of business is Florida. Caribe Ford is not a corporation with far-flung activities carried out in multiple jurisdictions where it is difficult to determine the locus of operations of the enterprise; its operations are,

---

**2.** The Court did state in *Taber* that "... in determining a corporation's principal place of business, a district court's inquiry must focus *solely* on the business activities of the corporation." 987 F.2d at 62–63 (emphasis in original). It is not simple to discern towards which test this statement inclines. Again, just

like the other two lead First Circuit cases that examine these tests, *Walker* and *Topp,* this statement was made in the context of a parent/subsidiary inquiry and therefore, it is not necessarily applicable to the scenario now before us.

or were,[3] exclusively carried out in Puerto Rico. *Topp*, 814 F.2d at 834; *Caribbean Mushroom*, 980 F.Supp. at 627; *Wright*, *supra*, § 3625 at 630–32.

■ We move on then to consider where Caribe Ford's principal place of business is pursuant to the other two tests: the locus of operations and center of corporate activity tests. In *Caribbean Mushroom*, this Court declined to apply the "nerve center" test because it was clear that the operations of the corporation "were carried out in no more than two locations." 980 F.Supp. at 627. Since Caribe Ford's operations are carried out in only one location, the "nerve center" test is even less applicable here. In applying the remaining two tests, the Court found that "[w]here a corporation is engaged in a single enterprise, substantially all of whose operations occur in one state, even though policy and administrative decisions are made elsewhere, the state of operations is the corporation's principal place of business." *Id.* at 628; *see also Sanchez v. UHS of Puerto Rico, Inc.*, 223 F.Supp.2d 371, 375 (D.P.R.2002) (finding that state where operations took place will be the corporation's principal place of business even when its policy and administrative decisions are made elsewhere.) In determining that the corporation's principal place of business was Puerto Rico, the Court in *Caribbean Mushroom* considered that the corporation's assets were in Puerto Rico and that the nature of what took place outside of Puerto Rico was purely corporate. 980 F.Supp. at 628. Significantly, the Court found also that the corporation's principal place of business during a period of inactivity was not altered just because the corporation had turned into a defunct enterprise and what took place once the business ceased to operate, took place outside of Puerto Rico. *Id.*

Defendants argue that Caribe Ford's principal place of business is Cape Coral, Florida because that is where director meetings took place and major policy decisions were made, and also where corporate income tax returns, records and corporate personnel who directed daily operations were located. Moreover, they claim Florida is the place designated in the charter and other corporate documents as the official headquarters of the company. Defendants also claim that since Caribe Ford ceased operations in Carolina, Puerto Rico towards the end of the year 2002, all remaining business has been conducted in Florida.[4] In addition, they argue that individual co-defendants Gary Fronrath, Robert Fronrath, Steven Westphal and Gwen Westphal are all residents of Florida. Finally, they maintain that Plaintiff has failed to demonstrate bad faith removal on their part.

A perusal of the record of this case confirms Plaintiff's suggestion that Caribe Ford had only one locale of operations located in Carolina, Puerto Rico, and thus, "the location of the bulk of the corporation's actual physical operations" is Puerto Rico. *Sanchez*, 223 F.Supp.2d at 376. No evidence has been submitted nor any allegations made by Defendants in this case that suggest the contrary. Subsequently and also reflected in the record of this case, Caribe Ford's day-to-day management took place in Carolina, Puerto Rico, where it had its inventory and employees and where it carried out the general business activities that led to the generation of income for the corporation. The daily management of the business aimed at selling automobiles and the management that

---

**3.** *See Taber*, 987 F.2d at 59, n. 1 (For purposes of diversity jurisdiction, citizenship is determined as of date of initiation of lawsuit.)

**4.** *See supra* n. 3.

directly brought about that result was in Puerto Rico. Just as the First Circuit found in *Lugo–Vina*, there are no allegations made or evidence presented in this case to support a finding that active managerial tasks took place in Florida and that the management for Caribe Ford's sole establishment was other than in Puerto Rico. 574 F.2d at 44.

## CONCLUSION

■ The foregoing shows that under the center of the corporate activity tests, which focuses on management as opposed to the corporate governance of a corporation,[5] and under the locus of operation test, Puerto Rico is Caribe Ford's principal place of business. Caribe Ford has failed to carry out its burden of establishing, as a matter of law, that Florida was its principal place of business and that consequently, removal was proper in this case.

Accordingly, we hereby **GRANT** in part and **DENY** in part Plaintiff's request for costs and expenses (Docket Nos. 25 and 32). The Court has carefully examined the bill of costs submitted by Plaintiff which does not detail the work that was performed exclusively as a result of removal. In light of the previous discussion where we determined that were it not for the inapplicability of the "nerve center" test, Defendant's position could have been fairly supportable and it would have had reason to believe Florida was its principal place of business, and in light of the fact that Plaintiff would have had expenses in this case regardless of the Defendant's removal of this case to federal court, Plaintiff is hereby awarded the sum Seven Thousand and Five Hundred Dollars ($7,500.00) which under 28 U.S.C. § 1447(c), we understand reasonably compensates it for just costs

and expenses pertaining to the removal of this case. The Court agrees with Plaintiff that all Defendants should be held jointly and severally liable to Ford for the payment of this amount. The four individual co-defendants in this case joined Caribe Ford's notice of removal (*See* Docket No. 5 at ¶ 2) two days after it was filed and at no time did they voice to this Court their opposition to the removal or to the representations Caribe Ford made to the Court in that notice of removal with regards to this Court's subject matter jurisdiction over Plaintiff's claims.

## ORDER OF REMAND

This Court has determined that it lacks subject matter jurisdiction over Plaintiff's claims. The claims in the complaint were brought pursuant to state law and Defendant's attempt at proving diversity jurisdiction has failed. There is no other basis to uphold this Court's original jurisdiction over this case. Accordingly, this case must be remanded to state court.

The Clerk of the Court shall serve the clerk of the appropriate state court, Commonwealth of Puerto Rico Court of First Instance, Carolina Part, with a certified copy of this Order and return this case to that state court, so that it can continue with its proceedings.

**SO ORDERED.**

---

**5.** *See Del Rosario–Ortega v. Star–Kist Caribe, Inc.,* 130 F.Supp.2d 277, 282–83 (D.P.R.2001) ("[F]ocus of the Court's inquiry is not where the ultimate power resides, but rather, where the day-to-day management of the corporation takes place...")